IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01437-LTB-CBS

FRANCISCO JUAN LOBATO, individually and as the personal representatives of the estate of
Frank Lobato;
ANTHONY LOBATO;
BARBARA LOBATO; and
RAMONA LOBATO,
     Plaintiffs,
v.

RANJAN FORD, JR., individually and as a Police Officer for the City and County of Denver;
JOSHUA HERRICK, individually and as a Police Officer for the City and County of Denver;
GENE SHARLA, individually and as a Police Officer for the City and County of Denver;
ROBERT SHILLER, individually and as a Police Officer for the City and County of Denver;
CHARLES KYLE, individually and as a Police Officer for the City and County of Denver;
STEVEN ADDISON, individually and as a Police Officer for the City and County of Denver;
JOHN and JANE DOES, Denver Police Officers whose true names and identities are unknown;
GERALD R. WHITMAN, Chief of Police of City and County of Denver, and
THE CITY AND COUNTY OF DENVER, a municipal corporation,
     Defendants.

---

## ORDER ON PENDING MOTIONS TO STRIKE

---

Magistrate Judge Craig B. Shaffer

     THIS MATTER comes before the Magistrate Judge on several pending motions that

arise from the parties' motions for summary judgment.  Defendant Ranjan Ford filed his Motion

to Strike Affidavit of Vanessa Fields (doc. # 186) and Motion to Strike Vanessa Fields as a

Disclosed Witness (doc. # 187) on April 20, 2007.  Defendants City and County of Denver and

Police Chief Gerald Whitman (hereinafter "the City Defendants") moved to join Defendant Ford's

motion to strike Ms. Fields as a disclosed witness (doc. # 194)[1] and filed a separate Motion to Strike Affidavit of Vanessa Fields (doc. # 195) on May 7, 2007.  Plaintiffs filed their Response to Defendant Ford's Motion to Strike Affidavit (doc. # 198) and Response to Defendant Fords' Motion to Strike Ms. Fields as a Disclosed Witness (doc. # 197) on May 15, 2007.  Plaintiffs filed a Motion to Strike Exhibit "A" from the City Defendants' Motion to Strike Affidavit of Vanessa Fields (doc. # 212) on June 6, 2007.  The City Defendants filed an Objection and Response (doc. # 227) to that motion on June 21, 2007.  On June 19, 2007, Plaintiffs filed their Motion to Strike Affidavit of Lieutenant Stacy Goss and Captain Steven W. Carter (doc. # 220).  The City Defendants filed a Response to Plaintiffs' Motion to Strike Affidavit (doc. # 228) on July 3, 2007.

By Order of Reference dated August 11, 2005, this civil action was referred to the Magistrate Judge to "hear and determine pretrial matters, including discovery and other non-dispositive motions" and to "conduct hearings . . . and submit proposed findings of fact and recommendations for rulings on dispositive motions."  The aforementioned motions were referred to this court on April 23, June 8, June 20, 2007 and September 4, 2007.  The court has reviewed the pending motions, the parties' briefs and related exhibits, the entire case file, and the applicable law.  The court has also carefully considered the arguments of counsel during a nearly three-hour motions hearing on July 16, 2007.

## FACTUAL BACKGROUND

---

[1]Document # 194 is captioned "Joinder of Defendants City and County of Denver and Chief of Police Gerald Whitman in Defendant Ford's Motion to Strike Affidavit of Vanessa Fields."  However, the first paragraph of this motion indicates that the moving defendants actually wish to "join in Defendant Ford's Motion to Strike Vanessa Fields as a Disclosed Witness."

Plaintiffs' Amended Complaint, filed on January 6, 2006, arises out of the fatal shooting of Frank Lobato on July 11, 2004 by Denver police officer Ranjan Ford. Plaintiffs, the Estate of Frank Lobato and his four surviving children, allege violations of their First, Fourth, Fifth and Fourteenth Amendment rights under 42 U.S.C. § 1983 and a conspiracy claim under 42 U.S.C. § 1985. The Amended Complaint asserts claims against Denver police officers Ranjan Ford, Joshua Herrick, Gene Sharla, Robert Shiller, Charles Kyle, and Steven Addison, as well as Denver Police Chief Gerald Whitman, and the City and County of Denver.

While the parties' summary judgments briefs provide competing interpretations of the events surrounding Mr. Lobato's death, the following facts appear to be undisputed. On the evening of July 11, 2004, the Denver Police Department was contacted by Kathy Sandoval, who reported that she had been assaulted and held against her will by Vincent Martinez. Officers Shiller, Huff and Herrick made initial contact with Ms. Sandoval at the McDonald's restaurant at 1350 West Colfax Avenue. Ms. Sandoval indicated that Mr. Martinez was likely still asleep in the first floor of her apartment at 1234 West 10th Avenue. At some point, Ms. Sandoval also indicated that another Hispanic male, her "uncle," had been staying in her apartment and might be sleeping in an upstairs bedroom. A radio check revealed that Mr. Martinez had two outstanding arrest warrants, including a recent one for assault.

In response to a request for assistance, Defendant Ford proceeded to a location near 1234 West 10th Avenue where he joined Defendants Schiller, Huff and Herrick. The four officers spent some time reconnoitering the premises. It is undisputed that Vincent Martinez left the Sandoval apartment at some point while the rear of the residence was unsecured. During this same interval, Officer Sharla arrived at the 1234 West 10th Avenue location. Meanwhile, Sergeants Addison and

Kyle had conducted a further interview of Ms. Sandoval at the McDonald's restaurant.  Based upon information provided by Ms. Sandoval, Sergeant Addison advised Officer Shiller that the "uncle" would be in "one of the back bedrooms" and cautioned the officers on scene to "be careful."  Defendants Addison and Kyle then proceeded to the 1234 West 10th Avenue address. Once at that location, Addison and Kyle approved a plan to enter the apartment through an open second floor window, using a ladder provided by the Denver Fire Department.

Defendants Ford, Herrick and Sharla entered the second floor of the Sandoval apartment and began searching the upstairs rooms.  Officers Shiller and Huff positioned themselves outside at the apartment's front door, while Addison and Kyle remained at the back door.  Eventually, Ford, Herrick and Sharla positioned themselves outside the closed door of the only uninspected room on the second floor.  As the officer closest to the bedroom door, Defendant Ford had his Glock 9mm semiautomatic handgun drawn in his left hand and a flashlight in his right hand. Defendant Sharla apparently pushed the bedroom door open.  In a matter of seconds, Defendant Ford fired a single shot that struck Frank Lobato in the chest.  Mr. Lobato was later pronounced dead at Denver Health Medical Center.  Defendant Ford claims that he fired after seeing a shiny object in the victim's hand.  Plaintiffs contend that the named individual co-Defendants supervised, assisted, conspired and directed Defendant Ford in shooting and killing Mr. Lobato. Plaintiffs further contend that the City and County of Denver and Chief Whitman violated their constitutional rights by failing to properly hire, train and supervise the other Defendants.

This court held a Fed.R.Civ.P. 16 scheduling conference on October 24, 2005.  At that conference, the court set a discovery cutoff date of July 24, 2007 and a dispositive motion deadline of September 1, 2006.  In response to a motion filed by Plaintiffs, on May 25, 2006, I

extended the discovery cutoff to October 2, 2006 and the dispositive motion deadline to November 13, 2006.  On, July 21, 2006, the court granted Defendants' unopposed motion and extended the discovery deadline to December 15, 2006 and the dispositive motion deadline to January 15, 2007.

Plaintiffs provided their Initial Rule 26(a)(1) Disclosures on October 21, 2005.  Those disclosures identified 34 individuals by name and address.  For 22 of these individuals, Plaintiffs simply indicated that the disclosed person "[h]as information regarding the incident of July 11, 2004."  As to one individual disclosed on October 21, 2005, Ashley McQueen, Plaintiffs merely stated that she "[h]as information regarding officer Ranjan Ford, Jr."  On September 21, 2006, Plaintiffs served their First Supplemental Rule 26(a)(1) Disclosure.  Plaintiffs identified three individuals who had "information regarding Frank Lobato and his condition prior to July 11, 2004."

Plaintiffs first disclosed Vanessa Fields as a person likely to have discoverable information in their Second Supplemental Rule 26(a)(1) Disclosure, served on or about December 15, 2006.  Apart from providing an address, Plaintiffs stated simply that Ms. Fields "[h]as information regarding Defendant, Ranjan Ford."[2]  Defendant Ford and the City Defendants filed separate motions for summary judgment on January 16, 2007.  At some point after December 15, 2006, Plaintiffs' private investigator interviewed Ms. Fields.  The information from that meeting was

---

[2]By way of comparison, Plaintiffs' Second Supplemental Rule 26(a)(1) Disclosure identified several witnesses who have "information concerning policies and practices of the City and County of Denver in connection with the Denver Police Department of the City and County of Denver in regarding to the investigation of the use of deadly force by Denver Police officers and its failing to discipline or otherwise hold police officers accountable for the use of deadly force in the City and County of Denver."

incorporated into a draft affidavit which Plaintiffs' counsel reviewed with Ms. Fields during a

subsequent interview at her home on March 17, 2007.  During that same interview, Ms. Fields

signed her affidavit in the presence of a notary public.  That affidavit was later attached to

Plaintiffs' Amended Response to Defendant Ford's Motion for Summary Judgment (doc. # 170)

as Exhibit 21-F, which was filed with the court and served on defense counsel on April 6, 2007.

On April 13, 2007, Plaintiffs marked the same affidavit as Exhibit 66-C to Plaintiffs'

Memorandum Brief in Opposition to Defendants City and County of Denver and Chief of Police

Gerald R. Whitman's Motion for Summary Judgment (doc. # 179).

The City Defendants apparently served their initial Rule 26(a)(1) disclosures on or about

October 17, 2005.  Among the individuals identified in those initial disclosures was Denver Police

Captain Steven W. Carter, who

> may have discoverable information regarding training policies, practices and
> procedures, including use of force, decisional-shooting and tactics, as well as other
> relevant training provided to members of the Denver Police Department.

Captain Carter was also referenced in the City Defendants' Second Supplemental Disclosures,

served on or about September 27, 2006.  The Second Supplemental Disclosures indicated that

Captain Carter

> is the Director of Training in the Denver Police Department's Training Bureau and
> he may have discoverable information about the training provided to recruits and
> members of the Police Department on various subjects, including but not limited
> to, the Department's Use of Force Policy, laws pertaining to the use of force and
> use of deadly force, decisional shooting, firearms safety, and building search
> techniques; and about the evolution of the Department's policies governing the use
> of force by police officers.

The City Defendants also disclosed Denver Police Lieutenant Stacy Goss for the first time

in their Second Supplemental Disclosures.[3]  According to the City Defendants, Lieutenant Goss
is assigned to the Internal Affairs Bureau (IAB) of the Denver Police Department
and she may have discoverable information about the role that the IAB serves in
the Denver Police Department generally and about the Denver Police
Department's recent history prior to July 11, 2204 of the manner and means by
which complaints or reports of alleged excessive uses of force and/or alleged uses
of unnecessary force are received; the manner and means by which investigations
of such complaints or reports are initiated and conducted; the manner and means
by which disciplinary actions are initiated and taken when appropriate; and the
inherent difficulties faced by police departments in sustaining such complaints or
reports.  Lt. Goss may further have discoverable information concerning the
disciplinary histories and complaint histories of Officer Ranjan Ford and/or the
other individually named Defendants prior to July 11, 2004, including how any
complaints or reports of alleged excessive uses of force and/or uses of unnecessary
force against those Defendants were received, how the investigations into such
complaints or reports were initiated and conducted, the outcome of such
investigations, and whether disciplinary actions were initiated and taken as a result
of such complaints or reports.

On or about November 21, 2006, the City Defendants served their Amended Second

Supplemental Disclosures in order to correct a mistake in the numbering of their list of disclosed

witnesses.  Although both Captain Carter and Lieutenant Goss were included in these amended

disclosures, the narrative description for each witness mirrored exactly the information contained

in the supplemental disclosures served on or about September 27, 2006.

## DISCUSSION

As a preliminary matter, the court should note that Plaintiffs have taken exception to the

---

[3]During his deposition on August 31, 2006, Defendant Whitman was asked whether the
Denver Police Department had a warning system in place to regulate whether officers have too
many use of force reports.  In referring to a database maintained by Internal Affairs, Chief
Whitman testified, in part, that Lieutenant Goss was "the lieutenant in professional standards that
monitors the database, reviews the information, and then can generate cases or send the
information forward to the officer's command."  *See* Exhibit C, at p. 266, attached to City
Defendants' Response to Plaintiffs' Motion to Strike.

District Court's decision to refer the instant motions to the Magistrate Judge.  Plaintiffs contend

that the issues raised in the various motions to strike are inextricably intertwined with the pending

motions for summary judgment and are therefore "dispositive" motions that are not properly

referred to the Magistrate Judge "in derogation of Fed.R.Civ.P. 72."  *See, e.g.,* Plaintiffs'

Response to Defendant Ford's Motion to Strike Affidavit of Vanessa Fields, at 2.  While the

instant motions do not purport to seek dispositive relief, the formal label of a motion is not

determinative for purposes of 28 U.S.C. § 636(b)(1)(A).  "The penalty to be imposed, rather than

the penalty sought by the movant, controls the scope of the magistrate's authority" for purposes of

Rule 72 of the Federal Rules of Civil Procedure.  *Gomez v. Martin Marietta Corp*., 50 F.3d 1511,

1519-20 (10th Cir. 1995) (notwithstanding movant's requested relief, an order falls under Rule

72(a), rather than Rule 72(b), where the magistrate judge does not impose a dispositive sanction).

 Plaintiffs' challenge to the District Court's order of reference is rejected in view of this court's

rulings on the instant motions.


I.      *Defendants' Motions to Strike Ms. Fields as a Disclosed Witness*

        Defendant Ford has moved for an order striking Ms. Fields as a witness in this case and

prohibiting Plaintiffs from offering any testimony or evidence relating to Ms. Fields, based upon

Plaintiffs' alleged failure to comply with Fed.R.Civ.P. 26(a)(1) and 26(e)(1).  More particularly,

Defendant Ford argues that Plaintiffs' December 15, 2006 disclosure of Ms. Fields' identity and

address was untimely since Defendant Ford did not actually receive that disclosure prior to the

December 15th discovery cut-off date.  Defendant Ford also contends that the December 15th

disclosure lacked the specificity required by Rule 26(a)(1) since Plaintiffs failed to identify the

"subjects of information" that Ms. Fields might provide to support the claims or defenses in this case.[4]

Plaintiffs insist that they did not acquire Ms. Fields' name or address until December 9, 2006, a few days before the discovery cutoff of December 15, 2006. *See* Plaintiffs' Response to Defendant Ford's Motion to Strike Vanessa Fields as a Disclosed Witness, at 4. Under the circumstances, Plaintiffs believe their disclosure of Ms. Fields was timely. As for Defendants' attack on the sufficiency of the December 15th disclosure, Plaintiffs contend that Ms. Fields was "well known" to Defendant Ford. Moreover, Plaintiffs note that Defendants failed to raise any objections upon receipt of the December 15th Second Supplemental Disclosure.

Rule 26 of the Federal Rules of Civil Procedure provides, in pertinent part, that a party must disclose to other parties in advance of formal discovery

> the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

*See* Fed.R.Civ.P. 26(a)(1)(A). While a party is not necessarily required to provide a minute recitation of the putative witness' knowledge, the Rule 26(a)(1)(A) disclosure should indicate "briefly the general topics on which such persons have knowledge." *See* Advisory Committee Notes to 1993 Amendments to Rule 26(a)(1)(A).[5] The Advisory Committee's reference to

---

[4]Although the City Defendants have joined Defendant Ford's motion to strike Ms. Fields as a disclosed witness, they largely rely on the facts and arguments cited in Ford's motion to strike. Accordingly, the court will direct the bulk of its comments to Defendant Ford's arguments and analysis.

[5]The United States Supreme Court has acknowledged the "weight" and deference to be given to the Advisory Committee's construction of any Federal Rule of Civil Procedure. *See, e.g., Schiavone v. Fortune,* 477 U.S. 21, 30-31 (1986).

"topics" suggests that the disclosing party must provide more than a perfunctory statement that the identified person has information "about the case."  Where a party fails to make a disclosure required by Rule 26(a) or Fed.R.Civ.P. 26(e)(1), that party may not use "as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed," unless the court determines that the failure to disclose was substantially justified or harmless.  *See* Fed.R.Civ.P. 37(c)(1).

The court's own research has found very little case law analyzing "how much" information is required for Rule 26(a)(1)(A) disclosures.  *See, e.g., Crouse Cartage Co. v. National Warehouse Investment Co.*, 2003 WL 23142182, *1(S.D. Ind. 2003) (finding that Rule 26(a)(1) requires disclosures that are "complete and detailed").  Some additional guidance, however, can be gleaned from Fed.R.Civ.P. 26(g)(1), which provides that initial disclosures must be based upon a "reasonable inquiry" by counsel or the disclosing party, and must be "complete and correct as of the time [they] are made."

> Before making initial disclosures, parties must "make a reasonable inquiry into the facts of the case."  Parties need not conduct "an exhaustive investigation at this stage of the case, but one that is reasonable under the circumstances, focusing on the facts that are alleged with particularity in the pleadings."

*Lintz v. American General Finance, Inc.*, 1999 WL 619045, *3 (D. Kan. 1999).  *Cf. Gucci America, Inc. v. Costco Wholesale Corp.*, 2003 WL 21018832, *2 (S.D.N.Y. 2003) (holding that Rule 26(g) imposes an obligation to make a reasonable inquiry to ensure that the party's disclosures are complete and accurate).  *See also Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 691 (D. Kan. 1996) (noting that a party's "reasonable inquiry" prior to making initial disclosures "will vary based upon such factors as the number and complexity of the issues; the location,

number, and availability of potential witnesses and documents; . . . and of course how long the party has to conduct an investigation, either before or after filing the case").

Any critique of a party's initial disclosures must also take into consideration the objectives underlying Rule 26(a)(1).  The mandatory disclosure requirements under Rule 26(a)(1) are designed to accelerate the exchange of basic information, to "help focus the discovery that is needed, and facilitate preparation for trial or settlement."  *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a).  Initial disclosures should provide the parties "with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement."  *Windom v. FM Industries, Inc.*, 2003 WL 21939033, * 2 (D. Neb. 2003) (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992)). In short, the Rule 26(a)(1) disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish.  The litigants should not indulge in gamesmanship with respect to the disclosure obligations."  *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a).  *See also Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 589 (D.N.J. 1997) (Rule 26 disclosure requirement should be applied with common sense).

Defendant Ford first attacks Plaintiffs' Second Supplemental Disclosure as untimely under Rule 26(a)(1) because it was received after the court-imposed discovery deadline had passed.[6]

---

[6]Defendants elected not to challenge the timeliness of Plaintiffs' April 6th disclosure of the Fields affidavit.  Rule 26(e)(1) requires a party to supplement disclosures "at appropriate intervals."  *See* Advisory Committee Notes to 1993 Amendments to Rule 26(e)(1) ("[s]upplementations need not be made as each new item of information is learned, but should be made at appropriate intervals during the discovery period, with special promptness as the trial date approaches").  *Cf. Dunkin' Donuts Inc. v. Dough Boy Management, Inc.*, 2006 WL 20521, *8 (D.N.J. 2006) (holding that defendants had a duty to supplement their initial disclosures as

Ford cites no legal authority in support his bright-line interpretation of Rule 26(a)(1). Indeed,

Defendant Ford's position is contradicted by Rule 26 itself, which plainly contemplates

that initial disclosures may reflect as-yet incomplete knowledge.  *See Caldwell-Baker Co. v.

Southern Illinois Railcar Co.*, 2001 WL 789389 (D. Kan. 2001).

Defendant Ford concedes that he does not know when Plaintiffs first became aware of Ms.

Fields' existence.  However, Ford notes that Ms. Fields apparently contacted local media outlets

shortly after the shooting on July 11, 2004.[7]  Defendant Ford then leaps to the assumption that

Plaintiffs withheld Ms. Fields' identity and the information that she might provide for more than

two years.  In short, Defendants' timeliness challenge relies on little more than speculation.

Plaintiffs concede that they "had heard rumors that an ex-girlfriend of Ford had information

regarding Ford relating to police shooting cases and the Lobato case," yet counsel insists that he

obtained Ms. Field's name and address only days before the Second Supplemental Disclosure was

served on December 15th.  Without knowing Ms. Fields' name, Plaintiffs could not have complied

with the literal requirements of Rule 26(a)(1), which require disclosure of an individual's "name

and address, if known."  While Plaintiffs' Second Supplemental Disclosure was served

---

they acquired pertinent information).  At some point during the 92-day interval between
December 15, 2006 and March 17, 2007, Plaintiffs' private investigator interviewed Ms. Fields
and took notes that formed the basis for Ms. Fields' affidavit.  Prior to executing the Fields
affidavit on March 17th, Plaintiffs made no effort to supplement their earlier disclosures.  *Cf.
Reddick v. Bloomingdale Police Officers*, 2003 WL 1733560, *12 (N.D. Ill. 2003) (noting that
defendant had a duty to supplement its Rule 26(a)(1) disclosures as soon as defendant had located
and contacted a previously disclosed witness).  Plaintiffs' counsel waited another 20 days before
providing Ms. Fields' affidavit as an attachment to the amended response to Ford's summary
judgment motion.

[7]Ms. Fields' affidavit indicates that she contacted a local newspaper shortly after seeing
Officer Ford "in the news . . . claiming that [Frank Lobato] had a pop can in his hand" and after
she "put[] a tip in to 9 News."  *See* Fields Affidavit, at 3.

12

contemporaneously with the discovery deadline of December 15, 2006, I do not find, from that fact alone, that Plaintiffs' disclosure of Ms. Fields was untimely.

Defendant Ford also challenges the sufficiency of the Fields disclosure on December 15th. Plaintiffs' Second Supplemental Disclosure merely indicated that Ms. Fields had "information regarding Defendant, Ranjan Ford." Citing this court's decision in *Sender v. Mann*, 225 F.R.D. 645 (D. Colo. 2004), Defendant Ford contends that this disclosure failed to "sufficiently apprise Defendant Ford of the nature of [the] information" Ms. Fields might provide in support of Plaintiffs' claims. *See* Defendant Ford's Motion to Strike Vanessa Fields as a Disclosed Witness, at 6. Plaintiffs implicitly suggest that their Second Supplement Disclosure complied with Rule 26(a)(1)(A) by providing all the information they had concerning Ms. Fields as of December 15, 2006. Plaintiffs also argue, without further explanation or factual showing, that their description of Ms. Fields' information was adequate if the court takes into consideration what "the other parties or their lawyers knew or should have known."[8] *See* Plaintiffs' Response to Defendant Ford's Motion to Strike Vanessa Fields as a Disclosed Witness, at 8. *But see Sender v. Mann*, 225 F.R.D. at 650 (noting that Rule 26(a)(1) disclosure requirements should be applied with common sense, and should not be treated as a mere technical formality). I recognize that Rule 26(e)(1) does not require a party to supplement incomplete initial disclosures if the

---

[8]In support of this bald assertion, Plaintiffs cite *First National Bank of Durant v. Trans Terra Corporation International*, 142 F.3d 802, 811-12 (5th Cir. 1999). The facts in that case bear no similarity to the circumstances surrounding Ms. Fields' December 15th disclosure. In *First National*, the trial court allowed an expert to testify about a particular title opinion that had not been included in a list of numerous other title opinions referenced in the expert's written report. The appellate court concluded that "[t]he lawyers knew or should have known that the expert would have the same opinion as to the November 22 title opinion, whether or not he had reviewed it prior to preparing the expert report, and that the Bank would ask him about that title opinion at trial." *Id.* Plaintiffs' reliance on *First National* is wholly misplaced.

additional information has "otherwise been made known to the other parties during the discovery process or in writing." However, Rule 26(a)(1) does not permit a party to avoid its mandatory discovery obligations by arguing that the other side could have relied on its own resources to obtain the same information.

Defendant Ford's motion to strike and Plaintiffs' response require the court to consider the interplay of Rule 26(a)(1) and Rule 26(g)(1). A party is not expected to undertake an exhaustive investigation prior to making Rule 26(a)(1) disclosures, *Hewlett Packard Co. v. Factory Mutual Insurance Co.*, 2006 WL 1788946, *14 (S.D.N.Y. 2006), but counsel's certification under Rule 26(g)(1) must be based upon a reasonable inquiry. While Rule 26(a)(1) contemplates that initial disclosures will reflect information reasonably available at the time of the disclosure, *RCSH Operations, LLC v. Third Crystal Park Associates Limited Partnership*, 115 Fed. Appx. 621 (4th Cir. 2004), Rule 26(g)(1) requires that disclosures be "complete and correct as of the time" they are made. A party is not expected to be omniscient, but is required to provide meaningful initial disclosures. Ultimately, a party's compliance with Rule 26(a)(1) and Rule 26(g)(1) must be measured against the salutory purposes underlying those Rules, which are to accelerate the exchange of basic information and prevent a party from being unfairly surprised.

In this respect, I find that Plaintiffs' December 15th disclosure of Ms. Fields was incomplete and, therefore, failed to fully comply with Rules 26(a)(1) and (g)(1). Plaintiffs' counsel claims that prior to December 9th, he had only "rumors that an ex-girlfriend of Ford had information regarding Ford relating to shooting cases and the Lobato case." Yet with the disclosures on December 15th, counsel was certifying, consistent with Rule 26(g)(1), that he had conducted a "a reasonable inquiry" and that Ms. Fields was "likely to have discoverable

information that [Plaintiffs] may use to support [their] claims" against Defendant Ford.

This court would not normally equate "rumors" with a "reasonable inquiry" under Rule 26(g)(1). However, having concluded that media reports were sufficiently credible to warrant disclosure of Ms. Fields' as an individual with information relevant to the claims or defenses in this case, counsel had an obligation under Rule 26(g)(1) to provide "complete" disclosures by indicating generally what information Ms. Fields might have "regarding" Defendant Ford. At the very least, Rule 26(g)(1) obligated Plaintiffs to qualify their disclosure of Ms. Fields by acknowledging that they were relying exclusively on information disclosed in the local media and indicating where those media reports appeared or could be found. That information would have provided some insight into Ms. Fields' possible testimony and enabled Defendants to make a better informed decision as to whether it was necessary to depose her during the discovery period.

Where a party fails to comply with Rule 26(a)(1), Fed.R.Civ.P. 37(c)(1) requires the imposition of sanctions unless the court determines that the failure to disclose was substantially justified or harmless. The non-moving party has the burden of showing that they were substantially justified in failing to comply with Rule 26(a)(1). *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995). While Rule 37(c)(1) is written in mandatory terms, it also vests the court with discretion to impose "other appropriate sanctions" in addition to or in lieu of an order striking witnesses or evidence not properly disclosed. *See Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (recognizing that Rule 37(c) vests broad discretion with the trial court). *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting that the district court should be given

15

particularly wide latitude in imposing sanctions under Rule 37(c)(1)); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001) (holding that district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations).

Similarly, Rule 26(g)(3) provides that the court, on motion or upon its own initiative, shall impose an "appropriate sanction" where the Rule 26(g)(1) certification requirement is violated without substantial justification. In 1993, Rule 26(g) was modified "to be consistent with Rules 37(a)(4) and 37(c)(1)." *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(g). The non-moving party should also bear the burden of persuasion in disputes arising under Rule 26(g)(1).

For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance. *Nguyen v. IBP, Inc.*, 162 F.R.D. at 680. "Failure to comply with the mandate of [Rule 26(a)] is harmless when there is no prejudice to the party entitled to the disclosure." *Id.*

> The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court. A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d at 993. The court will similarly construe the "substantial justification" requirement in Rule 26(g)(1).

After considering the *Woodworker's* factors as they relate to Defendant Ford's motion to strike Ms. Fields as a disclosed witness, I conclude that an exclusionary sanction is unwarranted given the factual record established by the parties.  I have no doubt that Ms. Fields' affidavit came as a surprise to Defendant Ford and his counsel, particularly given the accusations of sexual misconduct which seem wholly irrelevant to the claims in this case.  Plaintiffs, in the first instance, had an obligation to provide disclosures that fully complied with the applicable rules of civil procedure.

However, some of the "surprise" that Defendant Ford now decries could have been avoided by a more timely invocation of the Federal Rules.  Ford argues that Plaintiffs' disclosure was so deficient that he "would have no way of determining if Ms. Fields was an individual that required deposition."  *See* Defendant Ford's Motion to Strike Vanessa Fields as a Disclosed Witness, at 6.  However, the same lack of information characterized Plaintiffs' disclosure of Ashley McQueen, who also purportedly "[h]as information regarding officer Ranjan Ford, Jr." That disclosure on or about October 25, 2005 triggered no objection from Defendant Ford. Given their prior relationship, Defendant Ford cannot plausibly suggest that Ms. Fields was a complete stranger.  Common sense would suggest that some immediate follow-up might be appropriate in the face of Plaintiffs' designation of Defendant Ford's "ex-girlfriend" as a potential witness.  Rule 37(a) provides that a party may move to compel "[i]f a party fails to make a disclosure required by Rule 26(a)."  *See* Fed.R.Civ.P. 37(a)(2)(A).[9]  Rule 37(a)(3) further states

---

[9]In the past, Defendant Ford has joined in motions to challenge the adequacy of Plaintiffs' expert disclosures and the sufficiency of Plaintiffs' responses to requests for admission.  *See* Joint Motion of Defendants for Leave to File Motion to Strike Plaintiffs' Medical Expert or for Other Sanctions (doc. # 110), filed December 15, 2006, and Defendants' Joint Motion for Order Determining Sufficiency of Plaintiffs' Responses to Defendants' Requests for Admissions (doc. #

that "an evasive or incomplete disclosure . . . is to be treated as a failure to disclose, answer, or respond." *See* Fed.R.Civ.P. 37(a)(3). However, it is not unreasonable to expect an aggrieved party to seek judicial intervention in a timely manner. *Cf. Buttler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) (held that a party cannot ignore available discovery remedies and then move to compel on the eve of trial).

Plaintiffs suggest that I should deny Defendant Ford's motion to strike Ms. Fields as a disclosed witness simply on the basis of waiver. That argument, however, would absolve Plaintiffs of any responsibility for their own Rule 26 violation. While the court is unwilling to completely overlook the surprise imposed on this Defendant, I believe that the totality of circumstances does not support the extreme sanction requested in Defendant Ford's motion.

As to the element of prejudice or surprise, Defendant Ford and the City Defendants are not in identical positions. The December 15th disclosure indicated that Ms. Fields "has information regarding Defendant, Ranjan Ford." Under the circumstances, it would be reasonable for the other Defendants to conclude that Ms. Fields's discoverable information was limited to Defendant Ford. *Cf. City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (held that plaintiff must provide Rule 26(a)(1) disclosures "in sufficient detail so as to enable each of the multiple Defendants in this case to understand the contours of its potential exposure and make informed decisions as to settlement and discovery"). The December 15th disclosure did not place the City and County of Denver on notice that Ms. Fields had information relating to the Denver Police Department's training practices or a claim alleging failure to train. The City Defendants obviously did not have the same personal connection with

140), filed February 14, 2007.

Defendant Ford's ex-girlfriend.  Under the circumstances, the City Defendants' claim of prejudice and surprise carries greater, but not dispositive, weight.

As for the second and third factors identified in *Woodworker's*, the court finds that any prejudice to the moving Defendants can be cured by allowing a deposition of Ms. Fields.  Should the claims against the Defendants proceed, that deposition may be scheduled at counsel's and the witness' convenience in advance of trial.  *See Scott v. IBM Corp.*, 196 F.R.D. 233, 247 n. 9 (D.N.J. 2000) (noting that exclusion of evidence under Rule 37(c) is not appropriate unless the resulting prejudice cannot be cured).  I find that the December 15th disclosure of Ms. Fields has had no disruptive effect on the scheduling of a trial in this case.

Finally, Plaintiffs dispute any suggestion that deficiencies in Ms. Fields' disclosure are the product of willfulness or bad faith.  The court has no reason to doubt counsel's representation that he only learned Ms. Fields' identity and address shortly before making the December 15th disclosure.  While Ms. Fields' disclosure should have provided additional information, I do not find that the omission of those details constitutes bad faith or willful conduct.  *Cf. Attorneys Title Guaranty Fund v. Goodman*, 179 F. Supp.2d 1268, 1277 (D. Utah 2001) ("'Bad faith' is the antithesis of good faith and has been defined in the cases to be when a thing is done dishonestly and not merely negligently.  It is also defined as that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest.").  Plaintiffs' counsel was faced with the choice of not including Ms. Fields in the Second Supplemental Disclosure because he had not yet verified the accuracy of earlier media reports, or disclosing the limited information he had as of December 15th.  In choosing the latter course of action, Plaintiffs should have indicated that Ms. Fields' disclosure was based on unverified information.  While the absence of bad faith alone is

19

not a basis for denying sanctions, *cf. Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 955 (10th Cir. 2002), it is significant in this case when weighed with the other *Woodworker's* factors.

After carefully considering the *Woodworker's* factors and the objectives underlying Rule 37(c), I find that the sanction specifically requested by Defendant Ford and the City Defendants, *i.e.*, striking Ms. Fields as a disclosed witness, is not warranted under the facts in this case. *Cf. Johnson Electric North America Inc. v. Mabuchi Motor America Corp.*, 77 F. Supp.2d 446, 458 (S.D.N.Y. 1999) (recognizing that preclusion of evidence not disclosed in discovery is a drastic remedy that should only be applied "where the failure to disclose represents a flagrant bad faith and callous disregard of the rules"). *See also Holsinger v. Wolpff & Abramson, LLP*, 2006 WL 1439575 (N.D. Cal. 2006) (declining to impose an evidence-preclusion sanction where defendant's Rule 26(a)(1) disclosures failed to include an identification of the subjects of the disclosed individual's discoverable information; held that the substance of discoverable information could have been easily determined through deposition).

Accordingly, for the foregoing reasons, Defendant Ford's Motion to Strike Ms. Fields as a Disclosed Witness (doc. # 187) is denied.  In the event that the District Court denies Defendant Ford's or the City Defendants' motions for summary judgment, this court will permit Defendants to take Ms. Fields' deposition prior to trial.  The court acknowledges that Rule 37(c)(1) permits the imposition of other sanctions, including the award of reasonable expenses and attorneys fees, in lieu of striking evidence.  Under the particular circumstances of this case, I will exercise my discretion and forego any award of fees.  Such an order would undoubtedly prompt further briefing on the amount of fees and costs.  *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 437 (1989) (warning that the matter of attorneys fees should not spawn more disputes).  I do not believe that

such extracurricular wrangling would be in the best interests of the parties or the court, and would only further delay the ultimate resolution of this case.

II.     *Defendants' Motions to Strike Ms. Fields' Affidavit*

Defendant Ford and the City Defendants have separately moved to strike Ms. Fields' affidavit which has been attached to Plaintiffs' responses to their summary judgment motions.[10]  In moving to strike Ms. Fields' affidavit, Defendant Ford contends that Ms. Fields' affidavit

> contains hearsay from unidentified sources and [is] entirely unrelated to the issues before the Court regarding the affirmative defense of qualified immunity. Additionally, Defendant Ford asserts that Ms. Fields' sworn statements are slanderous, and offered to inflame the tribunal.

*See* Defendant Ford' Motion to Strike Affidavit, at 3.  The City Defendants similarly contend that Ms. Fields' affidavit does not support the contentions advanced in Plaintiffs' response to their summary judgment motion and contains statements that should be struck as inadmissible and irrelevant hearsay.

Plaintiffs suggest the court should deny Ford's motion to strike because he "never identifies what he contends is the hearsay in Fields' affidavit" and because "he fails to identify what statements" are unrelated to the issues before the court.  Plaintiffs contend that Ms. Fields' statement is relevant to Ford's assertion that he fired at Mr. Lobato "based on his belief that the person in the bed had a gun in their hand."  Plaintiffs maintain that Ford's use of force was not objectively reasonable.  Plaintiffs cite statements that Ms. Fields attributes directly to Ford in

---

[10]As those motions have not been referred to this court for proposed findings of fact and recommendations, nothing in this Order should be taken as suggesting any opinions as to the merits of those motions or the corresponding responses.

support of their contention that this Defendant's "preconditioned and improper training" led him to believe that he was about to be ambushed.  Plaintiffs suggest that if interpreted in the light most favorable to the non-moving party, Ms. Fields' affidavit presents

> evidence to contradict the subjective 'belief' claimed by Ford that he thought Mr. Lobato had a gun in his hand and in fact establishes by his own admissions, that he had been trained by the Denver Police Department to shoot first whenever he had the subjective belief that he was being threatened rather than to objectively determine if the threat was real, contrary to the law . . . .

*See* Plaintiffs' Response to Defendant Ford's Motion to Strike Affidavit, at 9.  As for the arguments advanced by the City Defendants, Plaintiffs maintain that Ms. Fields' affidavit is relevant to the failure to train claim directed against the City and County of Denver.

While this court will decide the instant motions, as directed by the order of reference, the motions to strike Ms. Fields' affidavit (as well as the motion to strike the affidavits of Lieutenant Goss and Captain Carter) might be considered superfluous.  Motions to strike are disfavored, particularly in the context of motions for summary judgment.  *See Yong-Quin Sun v. Board of Trustees*, 429 F. Supp.2d 1002, 1030 (C.D. Ill. 2006), *aff'd* 473 F.3d 799 (7ht Cir.), *cert. denied*, 127 S.Ct. 2941 (2007).  *Cf. Allen v. Baxter Int'l Inc.*, 2006 WL 560608, * 1 n.1 (N.D. Ill. 2006) (in denying defendants' motion to strike, noted that defendants should have incorporated their arguments in a reply brief in support of summary judgment, instead of filing a separate motion; characterized defendants' motion to strike as "unnecessary clutter").  The District Court is always free to disregard the inadmissible portions of any affidavit tendered in conjunction with summary judgment briefing.  *See City of Chanute, Kansas v. Williams Gas Co.*, 743 F. Supp. 1437, 1445 n. 4 (D. Kan. 1990), citing *United States v. Alessi*, 599 F.2d 513, 514-15 (2d Cir. 1979).  *Cf. Kephart v. Data Systems International, Inc.*, 243 F. Supp.2d 1205, 1209 (D. Kan. 2003) (noting

that the court may enforce Fed.R.Civ.P. 56(e) simply by disregarding those portions of an affidavit that are not based on personal knowledge).  But motions to strike have been filed and this court will address the arguments raised in the parties' papers.

"Under Fed.R.Civ.P. 56(c), summary judgment is only appropriate if the pleadings and *admissible* evidence produced during discovery, together with any affidavits, show that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Western Diversified Services, Inc. v. Hyundai Motor*, 427 F.3d 1269, 1272 (10th Cir. 2005) (emphasis added).  The moving party bears the initial burden of showing that there is an absence of any issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991).  If the moving party meets this burden, the non-moving party may not rest upon its pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case.  *See* Fed. R. Civ. P. 56(e).  *See also Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact).

To sustain their burden under Rule 56, Plaintiffs' proffered affidavit must present material of evidentiary quality and be admissible in content.  *Northlake Marketing & Supply, Inc.  v. Glaverbel, S.A.*, 861 F. Supp. 653, 656 (N.D Ill. 1994), *opinion corrected on other grounds*, 1994 WL 542771 (N.D. Ill. Oct. 3, 1994).  *See also Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (in ruling on a motion to strike, the court will apply the Federal Rules of Evidence to determine whether an affidavit contains inadmissible hearsay).  Rule 56(e) provides that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible

in evidence, . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See* Fed.R.Civ.P. 56(e). "[G]eneralized, conclusory, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment." *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir. 1975). *Cf. Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989) ("a party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture"). *See also American Express Financial Advisors, Inc. v. Topel*, 38 F. Supp.2d 1233, 1242 (D. Colo. 1999) (noting that conclusory allegations not supported by specific facts cannot defeat a properly supported motion for summary judgment); *Maier-Schule GMC, Inc. v. General Motors Corp.*, 154 F.R.D. 47, 59 (W.D.N.Y. 1994) (holding that a non-moving party may not rely on inadmissible evidence to avoid summary judgment).

Plaintiffs suggest that Ms. Fields' affidavit has been offered to refute paragraph 17 of Ford's motion for summary judgment, which states

> Based on his belief that the person in the bed had a gun in their hand, officer Ford ducked and fired one shot.

*See* Plaintiffs' Response to Defendant Ford's Motion to Strike Affidavit, at 5. Plaintiffs argue, to the contrary, that Defendant Ford's use of deadly force on July 11, 2004 was unreasonable. In their Response to Defendant Ford's motion for summary judgment, Plaintiffs contend that Defendant Ford "had been conditioned and trained to shoot first and ask questions later." (Doc. # 170 at 13). According to Plaintiffs, "[i]t was Defendant Ford's preconceived ideas and training from the Denver Police Department that made him think he was going to be ambushed and not what he actually saw" on the night of July 11, 2004. (Doc. # 198 at 6). Plaintiffs suggest that the following passages in Ms. Fields' affidavit provide factual support for these assertions:

24

When we came back inside Ranjan Ford was talking about the Paul Childs case. He [Ford] was very animated. He [Ford] was demonstrating why he said police officers were justified in shooting and killing people. He [Ford] wanted to show me how to hold his revolver.

He [Ford] was on a soap box that the killing of Paul Childs was totally justified. He [Ford] said police officers are bonded together and all police officers will back each other when they shoot and kill. If he [Ford] was in that situation he would have felt justified in killing Paul Childs.

He [Ford] was hypersensitive that he would be stabbed or shot. He [Ford] kept repeating that he would have shot Paul Childs, whether he was a kid and mentally disabled or not.

Ranjan Ford said he had to make a decision in a split second when he felt threatened and that if he made the decision not to shoot he would get killed. Therefore, it was better for him to shoot if he was threatened rather than wait to see if the threat was real.

Ranjan Ford kept saying that police risk their lives every day. He [Ford] was very obsessed with being hurt or killed as a police officer. Ranjan Ford was hypersensitive and jumpy of being hurt.

He [Ford] kept explaining that as a police officer that you have to be proactive rather than reactive in threatening situations. He [Ford] said that is the way police officers are trained to protect themselves.

He [Ford] said he and all the officers in the Denver Police Department know that if they shoot someone, even wrongfully, the other officers would back them up and they would not lose their jobs or be disciplined.

They [Denver Police Department officers] could always claim that the guy reached for something or came at them in a threatening manner.

*Id.*, at 7-9. On closer examination, many of the cited passages fail to satisfy the standards imposed by Rule 56(e).

Both Defendant Ford and the City Defendants move to strike Ms. Fields' affidavit as inadmissible hearsay. Nothing in Ms. Fields' affidavit would suggest that Defendant Ford's purported statements fall within the scope of his employment or constitute statements made in his

official capacity as a Denver police officer, as required by Fed.R. 801(d)(2)(D). *Cf. Guzman v. Abbott Laboratories*, 59 F. Supp.2d 747, 756 (N.D. Ill. 1999) (striking portions of affidavit where affiant failed to offer evidence to show that statements attributed to third-parties were made within the scope of their employment).  However, Plaintiffs contend that Defendant Ford's statements would be admissible to show his state of mind at the time he shot and killed Frank Lobato.  *See* Plaintiffs' Response to the City Defendants' Motion to Strike Affidavit, at 11.  *See also Smith v. Duncan*, 411 F.3d 340, 347 n. 4 (2d Cir. 2005) (an out-of-court statement offered to show the declarant's state of mind would not be hearsay because the statement would not be offered to prove the truth of the matter asserted; "the mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind . . . of the declarant and *is not hearsay*").  The District Court will have to address the merits of this argument.

Defendant Ford's hearsay objection is less persuasive.  To the extent that Ms. Fields purports to recount comments made directly to her by Defendant Ford, those statements would qualify as admissions when offered against Defendant Ford.  *See* Fed.R.Civ.P. 801(d)(2)(A) (providing that a statement is not hearsay if the statement is offered against a party and is the party's own statement).  *Cf. Lewis v. Town of Waterford*, 239 F.R.D. 57, 60 (D. Conn. 2006) (declining to strike as hearsay statements in plaintiff's affidavit that were attributable to a defendant).

Whether offered against Defendant Ford or the City Defendants, however, the statements attributed to Defendant Ford must provide something more substantial than generalities or conclusory opinions as to what "all the officers in the Denver Police Department" know or how "all police officers" might respond to a particular situation.  *Cf. Davis v. City of Chicago*, 841

26

F.2d 186, 189 (7th Cir. 1988) (in holding that plaintiff's affidavit failed to satisfy the requirements

of Rule 56(e), observed that plaintiff offered no factual support for his claim of a "longstanding

custom and policy" within the City of Chicago's Department of Streets and Sanitation).

> Rule 56 demands something more specific than the bald assertion of the general
> truth of a particular matter, rather it requires affidavits that cite specific concrete
> facts establishing the existence of the truth of the matter asserted.

*Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 887 (7th Cir. 1998).  *Cf.*

*Pinnacle Communications International, Inc. v. American Family Mortgage Corp.*, 417 F.

Supp.2d 1073, 1085 (D. Minn. 2006) (striking portions of an affidavit after finding that the affiant

had failed to explain the factual basis for his opinions and conclusions).  While Defendant Ford

can articulate his own views on the need to be "proactive rather than reactive in threatening

situations," the Fields affidavit does not present information that is sufficiently specific to support

Ford's generalizations regarding his fellow officers.  *Cf. Perez v. Volvo Car Corp.*, 247 F.3d 303,

316 (1st Cir. 2001) ("[s]tatements predicated upon undefined discussions with unnamed persons at

unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e), even when

proffered in affidavit form by one who claims to be a participant"); *Maiorana v. McDonald*, 596

F.2d 1072, 1080 (1st Cir. 1979) (in § 1983 action arising out of police shooting, held that

plaintiff's counter-affidavits did not comply with Rule 56(e) to the extent that the affiant

purported to examine the thoughts and actions of others); *Burr v. Buns*, 439 F. Supp.2d 779, 789

(S.D. Ohio 2006) (in case where plaintiffs alleged municipal liability under 42 U.S.C.

§ 1983 based upon a failure to train and supervise police officers, held that the statements in

plaintiff's affidavit reflected nothing more than his knowledge of local lore).  I will strike those

portions of Ms. Fields' affidavit in which Defendant Ford purports to opine as to how other

unnamed Denver police officers might react when confronted with threatening situations and what those same unnamed officers might do "if they shot someone, even wrongfully."[11]

Ms. Fields also offers opinions regarding Defendant Ford's "hypersensitivity" to the dangers associated with being a police officer.  Rule 702 of the Federal Rules of Evidence permits the admission of lay opinion testimony that is rationally based on personal perception, helpful to understanding the testimony, and not based on scientific, technical or other specialized knowledge.  Yet, Rule 56(e) does not permit unsubstantiated affidavits.  Webster's Encyclopedic Unabridged Dictionary (2001 ed.) defines "hypersensitive" as "excessively sensitive," which implies a comparative assessment.  Nothing in Ms. Fields' affidavit demonstrates that she has sufficient experience, either with Defendant Ford or other police officers, to support such an evaluation.  *Cf. Bright v. Ashcroft*, 259 F. Supp.2d 494, 498-99 (E.D. La. 2003) (court was required to strike portions of a summary judgment affidavit containing opinion testimony where the affidavit did not establish the affiant was qualified to offer opinions about such matters).

Finally, Defendant Ford and the City Defendants challenge those portions of Ms. Fields' affidavit that reference the fatal shooting of Paul Childs which occurred approximately one year before the death of Frank Lobato.  This court is not required to draw any conclusions as to the ultimate relevance or admissibility of evidence relating to the Childs shooting.  Those questions are properly left to the District Court.  I simply have to measure Ms. Fields' references to the

---

[11]Striking these portions of the Fields affidavit should not have any dispositive effect, given the opinions expressed by Dr. Mayo, Plaintiffs' expert on police management operations and police procedures and the other exhibits cited in Plaintiffs' responses to Ford's and the City Defendants' motions for summary judgment. *See, e.g., Allen v. Muskogee, Oklahoma*, 119 F.3d 837, 842-45 (10th Cir. 1997) (when viewed in the light most favorable to the non-moving party, held that plaintiff's expert witness on police tactics and procedures raised genuine issues of material fact sufficient to preclude summary judgment).

Childs shooting against the standards imposed by Rule 56(e).

Although Defendant Ford apparently had no involvement in the Childs incident, Ms. Fields describes a conversation with Ford, in which he expressed his belief that "the killing of Paul Childs was totally justified" and "if he [Ford] was in that situation he would have felt justified in killing Paul Childs." *See* Fields Affidavit, at 1.  Plaintiffs suggest that Defendant Ford's alleged views concerning the Childs incident constitute relevant and admissible evidence to rebut this Defendant's contention that his use of force on July 11, 2004 was objectively reasonable.  To defeat a motion for summary judgment, however, a non-moving party must offer evidence that is based on more than mere speculation, conjecture or surmise.  *See Bones v. Honeywell International, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  *See also Grazier ex rel. White v. City of Philadelphia*, 2001 WL 1168093, *2 (E.D. Pa. 2001) (held that plaintiffs could not demonstrate a systematic failure to train police officers by alluding to past police shootings that occurred in different situations and with different explanations).  I find that Defendant Ford's alleged statements describing what he would have done if confronted by Paul Childs are simply too speculative to satisfy Rule 56(e) and should be struck for that reason.

Finally, Defendants have moved to strike those portions of Ms. Fields' affidavit that allege sexual misconduct on the part of Defendant Ford.  Plaintiffs seemly concede that such statements are irrelevant to the issues raised in the motions for summary judgment, since they suggest that the District Court can address those aspects of Ms. Fields' putative testimony, "if necessary, at trial."  *See* Plaintiffs' Response to Defendant Ford's Motion to Strike Affidavit, at 10.  In the absence of any opposition from Plaintiffs, the court will strike from Ms. Fields' affidavits any reference to allegations of sexual misconduct on the part of Defendant Ford.  *But see Ramirez*

29

*Rodriquez v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 425 F.3d 67, 77 n. 10 (1st Cir. 2005) (suggesting that trial courts have the power to exclude evidence under Fed.R.Evid. 403 at the summary judgment stage); *Weit v. Continental Illinois National Bank and Trust Co.*, 641 F.2d 457, 467 (7th Cir. 1981) (holding that the district court correctly excluded evidence under Fed. R. Evid. 403 from consideration on a motion for summary judgment).

Accordingly and for the foregoing reasons, I will grant in part and deny in part Defendant Ford's Motion to Strike Affidavit and the City Defendants' Motion to Strike Affidavit. This court will strike those portions of Ms. Fields' affidavit in which Defendant Ford purportedly opines on what "all officers in the Denver Police Department know" and how "all officers in the Denver Police Department" would react when faced with threatening situations or the possibility of disciplinary action. The court will also strike those portions of Ms. Fields' affidavit in which Defendant Ford allegedly comments on the Childs shooting, and those passages that allege sexual misconduct on the part of Defendant Ford.

III.    *Plaintiffs' Motion to Strike Affidavits of Lieutenant Goss and Captain Carter*

Plaintiffs have moved to strike the affidavits of Denver Police Lieutenant Stacy Goss and Denver Police Captain Steven Carter, which were attached as exhibits to the City Defendants' motion for summary judgment. As grounds for the requested relief, Plaintiffs contend that Goss and Carter were improperly disclosed under Rule 26(a)(1) and Rule 26(e)(1), and that their affidavits violate the requirements of Rule 56(e).

Plaintiffs' challenge to the timeliness of the City Defendants' disclosures is unpersuasive. Captain Carter was initially disclosed by the City Defendants on October 15, 2005. Additional

information concerning Captain Carter was incorporated in the City Defendants' Second

Supplemental Disclosure, served on or about September 27, 2006, approximately three months

before the discovery deadline.  Lieutenant Goss was disclosed by the City Defendants for the first

time in their Second Supplement Disclosure, although she had been referenced during Defendant

Whitman's August 31, 2006 deposition.  Plaintiffs argue that the disclosure of Goss and Carter

"just prior to the discovery cut-off" prevented Plaintiffs' counsel from conducting meaningful

discovery as to their expected testimony because by the time they were disclosed as possible

witnesses "all depositions had been firmly scheduled by both Plaintiffs and Defendants."  *See*

Plaintiffs' Motion to Strike Affidavit, at 4.  As the court previously noted, Rule 26(e)(1) requires

a party to supplement initial disclosures "at appropriate intervals."  The City Defendants'

September 27th disclosures identified the subjects of the information that Lieutenant Goss and

Captain Carter might provide.  Plaintiffs had 79 days in which to depose Goss and Carter, or in

which to file a motion to extend the discovery cut-off.  The court will not strike their affidavits

simply because Plaintiffs chose not to pursue either course of action.

Plaintiffs' substantive challenge to the affidavits of Goss and Carter is more difficult to

parse.  Plaintiffs argue, without further explanation, that

> The affidavits of Stacey Goss and Steven Carter are entirely hearsay and should be
> stricken in their entirety or at least all paragraphs that are hearsay should be
> stricken.  Paragraphs 2, 3, 4, 5, 6, 7, 8, 9 and 10 of Stacey Goss's affidavit are
> clearly hearsay.  Paragraphs 2, 3, 4, 5, (both paragraphs 5), 6, 7, 8, 9, 10, 11, 12,
> 13, 14, 15, 16 and 17 of Capt. Carter's affidavit all contain hearsay statements.
> *Hollander [v. American Cyanamid Co.*, 172 F.3d 192 (2nd Cir. 1999)].

The bases for Plaintiffs' hearsay objections are not immediately apparent to the court.

Many of the challenged paragraphs in the Goss and Carter affidavits merely describe data

management systems and training procedures utilized by the Denver Police Department, and do

31

not reference any "out of court statements" offered to prove the truth of the matter asserted. *See* Fed.R.Evid. 801(c).  The Goss and Carter affidavits set forth factual descriptions of matters within the affiants' direct knowledge and job responsibilities.  *Cf. Londrigan v. Federal Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (under Rule 56(e), the affiant would be permitted "to testify to his own observations upon review of the documents . . . ; the agency's procedures with respect to investigations during his own tenure therewith and earlier practices of which he possesses personal knowledge; and his personal experiences as an agent to the extent they bore relevance to the case").  *See also Reddy v. Good Samaritan Hospital and Health Center*, 137 F. Supp.2d 948, 956 (S.D. Ohio 2000) (for purposes of Rule 56(e), "[p]ersonal knowledge may . . . flow logically from the context of the affidavit").  If Plaintiffs believe there are hearsay statements contained within the cited affidavit paragraphs, it was incumbent upon Plaintiffs to explain and support that argument.[12]  *Cf. Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 579 (2d Cir. 1969) (a party moving to strike an affidavit is "required to do more than swing its bludgeon wildly").  This court is not required to research and construct a legal argument to support Plaintiffs' blanket objection.  *Cf. Sanders v. International Union of Operating Engineers, Local 150*, 2000 WL 283106, *4 (N.D. Ill. 2000) (declining to strike exhibits submitted in support of summary judgment based upon the non-movant's hearsay objection, where the non-movant offered no authority to support that objection).  Plaintiffs' motion fails to establish adequate grounds for the requested relief and the court will deny the

---

[12]For example, Plaintiffs argue that the court should strike as hearsay paragraph 4 of Captain Carter's affidavit, which states "Officer Ranjan Ford was a member of the Lateral Recruit Class of 200, effective December 3, 2001, and he completed his three (3) months of training on March 1, 2002."

request to strike the affidavits of Lieutenant Goss and Captain Carter.


IV.     *Plaintiffs' Motion to Strike Exhibit "A"*

On June 6, 2007, Plaintiffs moved to strike Exhibit "A" from the City Defendants' Motion

to Strike Affidavit of Vanessa Fields, arguing that the exhibit had been filed out of time and

without leave of court. Plaintiffs also contend that Exhibit "A" previously had not been produced

in discovery and consists of "extraneous matter" that is not relevant to the claims and defenses in

this case. Exhibit "A" is the "Findings of Fact; Conclusions and Order" issued by the City and

County of Denver Civil Service Commission in *In the Matter of Alvin J. LaCabe, Jr. v. James*

*Turney (Badge # 98056)*, Case No. 04 CSC 021 on April 6, 207, an administrative appeal

initiated by Officer James Turney challenging his disciplinary suspension following the fatal

shooting of Paul Childs on July 5, 2003.

The City Defendants indicate that the Order marked as Exhibit "A" was issued on April 6,

2007, well after the December 15th discovery deadline in this case. The City Defendants also

insist that Plaintiff never served a discovery request that was specifically directed to pleadings in

the Turney administrative appeal, and thus the City Defendants had no duty to produce the Order

pursuant to Rule 26(e)(2). Finally, the City Defendants argue that the findings of the Civil Service

Commission in the Turney administrative appeal only became pertinent after Plaintiffs proffered

the affidavit of Ms. Fields, which contained certain alleged statements by Defendant Ford

concerning the Childs shooting. The City Defendants have offered Exhibit "A" only

> to provide evidence showing that Officer Turney was in fact legally justified in
> using deadly force at the time he fired his weapon at Paul Childs and was only
> disciplined for using poor tactics which might have avoided the lethal
> confrontation which subsequently unfolded.

*See* Objection and Response to Plaintiffs' Motion to Strike Exhibit "A," at 3.  The City

Defendants insist that the same information was provided in another document, the District

Attorney's clearance letter, which was produced to Plaintiffs in discovery.

Although Plaintiffs offer alternative grounds for striking Exhibit "A," none of those

arguments are developed in any meaningful way or supported by citations to pertinent rules or

reported decisions.  For example, Plaintiffs argue that Exhibit "A" has never been previously

produced in discovery, but do not cite the court to any discovery request that would have

subsumed this document.  The court need not address the shortcomings in Plaintiffs' motion in

any further detail.  The City Defendants insist that Exhibit "A" was offered solely to rebut certain

statements referring to the Childs shooting that Ms. Fields attributes Defendant Ford.  Given my

decision to strike those portions of Ms. Fields' affidavit, Exhibit "A" is rendered superfluous.

Accordingly, I will deny Plaintiffs' Motion to Strike Exhibit "A" as moot.


## CONCLUSION

For the reasons previously stated, the court orders as follows:

1.      Defendant Ford's Motion to Strike Vanessa Fields as a Disclosed Witness (doc. #

187) is DENIED.

2.      Defendant Ford's Motion to Strike Affidavit of Vanessa Fields (doc. # 186) is

GRANTED IN PART and DENIED IN PART.

3.      Defendants City and County of Denver and Whitman's Motion to Strike Affidavit

of Vanessa Fields (doc. # 195) is GRANTED IN PART and DENIED IN PART.

4.      Plaintiffs' Motion to Strike Exhibit "A" from Defendants City and County of

Denver and Whitman's Motion to Strike Affidavit of Vanessa Fields (doc. # 212) is DENIED as moot.

     5.     Plaintiffs' Motion to Strike Affidavit of Lieutenant Stacy Goss and Captain Steven W. Carter (doc. # 220) is DENIED.

     DATED this 5th day of September, 2007.

BY THE COURT:


   s/Craig B. Shaffer
United States Magistrate Judge