IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01437-LTB-CBS

FRANCISCO JUAN LOBATO,
individually and as the personal representatives of the estate of Frank Lobato;
ANTHONY LOBATO;
BARBARA LOBATO; and
RAMONA LOBATO,

      Plaintiffs,

v.

RANJAN FORD, JR., individually and as a Police Officer for the City and
County of Denver;
JOSHUA HERRICK, individually and as a Police Officer for the City and
County of Denver;
CHARLES KYLE, individually and as a Police Officer for the City and
County of Denver;
STEVEN ADDISON, individually and as a Police Officer for the City and
County of Denver;
THE CITY AND COUNTY OF DENVER, a municipal corporation; and
JOHN and JANE DOES, Denver Police Officers whose true names and identities
are unknown,

      Defendants.

---

## ORDER ON PENDING MOTIONS

---

Magistrate Judge Craig B. Shaffer

      The facts underlying the instant action were summarized in detail in this court's Order on

Pending Motions to Strike, *Lobato v. Ford*, 2007 WL 2593485 (D. Colo. 2007), and do not bear

repeating here.  Suffice to say, Plaintiffs have alleged various constitutional violations arising out

of the fatal shooting of Frank Lobato on July 11, 2004 by Denver police officer Ranjan Ford.

Familiarity with the procedural history of this case is also presumed.  This matter comes before

the court on the following motions:

> (1) Plaintiffs' Motion for Sanctions and Protective Order and Other Relief Against Defendants City and County of Denver and Whitman and their Counsel for Numerous Improprieties (doc. # 221), filed on June 19, 2007;

> (2) Plaintiffs' Motion to Disqualify Karla Pierce as Counsel for the City and County of Denver, for Sanctions, Protective Order and to Allow Plaintiffs to Amend Their Complaint to Include Additional Civil Rights Violations that have Occurred as a Result of the Actions of Counsel for the City and County of Denver (doc. # 223), filed on June 19, 2006;

> (3) Plaintiffs' Motion to Strike and Seal City's Response to Plaintiffs' Motion to Disqualify Karla Pierce as Counsel for the City and County of Denver, for Sanctions, Protective Order and to Allow Plaintiffs to Amend Their Complaint to Include Additional Civil Rights Violations that have Occurred as a Result of the Actions of Counsel for the City and County of Denver (doc. # 234), filed on July 16, 2006;

> (4) Plaintiffs' Motion to Seal (doc. # 245), dated August 7, 2007; and

> (5) Plaintiffs' Motion to Strike Defendant City and County of Denver's Response to Plaintiffs' Motion to Strike and Seal City's Response to Plaintiffs' Motion to Disqualify Karla Pierce as Counsel for the City and County of Denver, for Sanctions, Protective Order and to Allow Plaintiffs to Amend Their Complaint to Include Additional Civil Rights Violations that have Occurred as a Result of the Actions of Counsel for the City and County of Denver (doc. # 246), filed on August 7, 2007.

Each of these motions has been fully briefed.

By Order of Reference dated August 11, 2005, this civil action was referred the Magistrate Judge to "hear and determine pretrial matters, including discovery and other non-dispositive motions."  The aforementioned motions were referred to this court on June 20, July 17 and August 9, 2007.  The court has reviewed the pending motions, the parties' briefs and related exhibits, the entire case file, and the applicable law.  The court has also carefully considered the arguments of counsel during a nearly three-hour motions hearing on September 28, 2007.  For the

reasons set forth below, the court will deny each of the pending motions.

I.      *Plaintiffs' Motion for Sanctions and Protective Order*

Plaintiffs' Motion for Sanctions (doc. # 221) identifies six alleged improprieties by Karla

Pierce, counsel for Defendants City and County of Denver and Chief Whitman (hereinafter "the

City Defendants").  According to Plaintiffs, defense counsel:  (1) served subpoenas *duces tecum*

without providing the notice required by Fed.R.Civ.P. 45(b)(1); (2) failed to advise Plaintiffs'

counsel of certain testing of physical evidence collected at the scene of the Lobato shooting; (3)

withheld documents on the basis of an invalid claim of privilege; (4) failed to produce documents

regarding the Denver Police Department's internal handling of the Lobato investigation; and (5)

initiated false disciplinary actions against Plaintiffs' counsel, Kenneth Padilla.  The court will

address each of these allegations separately.

A.      <u>Third Party Subpoenas</u>

Plaintiffs contend that "the blatant violation of the [sic] Fed.R.Civ.P. 45 and 5 demands

sanctions be imposed for violation of the rules and failing to provide notice to Plaintiffs regarding

securing confidential information."  *See* Plaintiffs' Motion for Sanctions, at 4.  Plaintiffs contend

that their inability to object in advance to the release of confidential information concerning Frank

Lobato "caused injury to Plaintiffs," as well as harm to the justice system and the public.  *See*

Plaintiffs' Motion for Sanctions, at 5.  To remedy this harm, Plaintiffs seek to bar Defendants

from using, directly or indirectly, the third-party records obtained by subpoena and to strike the

City Defendants' expert, Dr. James P. Kelly.  Plaintiffs also request an order holding Defendants

in contempt and requiring Defendants to deliver the originals and all copies of documents

obtained through the challenged subpoenas.  Plaintiffs cite Rule 45(b)(1) and the decision in *Spencer v. Steinman*, 179 F.R.D. 484 (E.D. Pa. 1998), as support for their requested sanctions as to this particular violation.

For the most part, the material facts surrounding the City and County of Denver's acquisition of the subject third-party records are not in dispute.  In May and June 2006, Ms. Pierce issued subpoenas *duces tecum* to ten third-party entities.  Ms. Pierce failed to contemporaneously serve Plaintiffs' counsel with copies of these subpoenas.  Of the ten entities served with subpoenas, only the Denver Housing Authority, Denver Human Services, Sunset Park Apartments, and Step 13 produced responsive documents.  By letter dated June 28, 2006, Plaintiffs' counsel noted the Rule 45(b)(1) violation and demanded that Ms. Pierce relinquish the original and all copies of documents produced pursuant to the City Defendants' subpoenas.  Mr. Padilla threatened to file a motion to quash and to seel other relief if Ms. Pierce did not comply with his request within seven days.  On June 29, 2006, Ms. Pierce acknowledged her failure to comply with Rule 45(b)(1) in a letter to Plaintiffs' counsel.  With the same letter, Ms. Pierce forwarded copies of the subpoenas at issue, and assured Mr. Padilla that the City Defendants would provide copies of all documents received in response to these subpoenas.  The City Defendants, however, have repeatedly declined to surrender all originals and copies to Mr. Padilla.

Rule 45(b)(1) expressly provides that where a subpoena is served on a non-party, "[p]rior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)."  *See* Fed.R.Civ.P. 45(b)(1).  *See also Schweizer v. Mulvehill*, 93 F. Supp.2d  376, 411 (S.D.N.Y. 2000) (the notice

required by Rule 45(b)(1) must be given before the subpoena is issued, not prior to its return

date).  The rationale for this notice requirement should be self-evident.  "[T]he purpose of the

prior notice requirement is to afford parties the opportunity to object to a subpoena before

documents are produced."  *David v. J.P. Morgan Chase & Co.*, 2007 WL 142110, *4 (W.D.N.Y.

2007).  As another court noted,

> the risks attendant to the misuse of the subpoena power are great.  Under this
> delegation of public power, an attorney is licensed to access, through a non-party
> with no interest to object, the most personal and sensitive information about a
> party.  By failing to receive prior notice of the information sought by the non-
> party, a party is deprived of its greatest safeguard under the Rule, *i.e.*, the ability to
> object to the release of the information *prior* to its disclosure. . . . Moreover, the
> injury resulting from attorney misuse of the subpoena power is not limited to the
> harm it inflicts upon the parties.  Rather, misuse of the subpoena power also
> compromises the integrity of the court's processes.

*Spencer v. Steinman*, 179 F.R.D. 484, 489 (E.D. Pa. 1998), *vacated in part on reconsideration*

*by Spencer v. Steinman*, 1999 WL 33957391, *2 (E.D. Pa. 1999).  Defense counsel has conceded

that her actions violated Rule 45.  That concession, however, does not end the court's analysis.

"Neither Rule 37 nor Rule 45 of the Federal Rules of Civil Procedure authorize the

imposition of sanctions for failure to provide prior notice on a subpoena *duces tecum*," *Shell v.*

*J.J.B. Hilliard*, 2007 WL 509263, *5 (E.D. Tenn. 2007), however, the court may impose

sanctions in the exercise of its inherent authority.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46

(1991).  Understandably, Plaintiffs' counsel interprets the factual record and opposing counsel's

conduct from his particular perspective as an advocate for his clients.  However, counsel's motion

is not supported by thorough legal research.

While this court does not condone defense counsel's failure to issue subpoenas with

proper notice to opposing counsel, I do not find that Ms. Pierce acted in bad faith, vexatiously, or

wantonly in failing to comply with Rule 45(b)(1).  That finding is significant in light of Plaintiffs'

reliance on *Spencer v. Steinman*, 179 F.R.D. 484, 489 (E.D. Pa. 1998) (relying on its inherent

powers in imposing monetary sanctions for a violation of Rule 45(b)(1)).  Further research would

have revealed that the court in *Spencer* subsequently reconsidered and vacated that portion of its

order imposing monetary sanctions on counsel.  Citing the Supreme Court's decision in

*Chambers*, the district court concluded that a monetary sanction can be imposed, pursuant to a

trial court's inherent powers, only upon a finding of "bad faith."  *Spencer v. Steinman*, 1999 WL

33957391 (E.D. Pa. 1999).  *See also Murphy v. Board of Education of Rochester City School

District*, 196 F.R.D. 220, 225 (W.D.N.Y. 2000) (suggesting that the imposition of sanctions

requires a finding that the offending conduct "was 'without a colorable basis' and was undertaken

in bad faith, i.e., 'motivated by improper purposes such as harassment or delay'").

     Apart from their invocation of Rule 45(b)(1), Plaintiffs argue that the documents obtained

through the City Defendants' third-party subpoenas "were confidential and were produced in

violation of the statutes and regulations of the United States and the State of Colorado, and in

violation of the policies and procedures of the agencies and entities that produced the records."

*See* Plaintiffs' Motion for Sanctions, at 4.  More particularly, Plaintiffs assert, without further

legal analysis,

> That the records produced by Denver Human Services are protected under a
> variety of statutes and regulations including: adult medical records are protected
> under 45 C.F.R. Subpart E including §§ 164.502 and 164.508; Food stamp records
> are protected under 7 C.F.R. § 272.1(c); TANF records are protected under 9
> C.C.R. 2503-1 *et seq.*.
>
> That the records produced by Sunset Park Apartments, a Section 8 housing
> provider, are protected by 5 U.S.C. § 552a(b).

> That the records produced by Step 13, an addiction treatment program, are
> protected by 42 C.F.R. Part 2.

*See* Plaintiffs' Motion for Sanctions, at 4.  The court's own research places Plaintiffs' argument in

proper context.

The protection for privileged information afforded by Rule 26(b)(1) does not extend to

"confidential" information.  *Cf. General Electric Capital Corp. v. Lear Corp.*, 215 F.R.D. 637,

643 (D. Kan. 2003) (noting that "confidentiality" does not necessarily equate to "privilege").  *See*

*also Seales v. Macomb County*, 226 F.R.D. 572, 576 (E.D. Mich. 2005) ("statutory provisions

providing for duties of confidentiality do not automatically imply the creation of evidentiary

privileges binding on courts").  None of the regulations cited in the above-quoted passage from

Plaintiffs' Motion for Sanctions absolutely preclude discovery in a litigation context.  For

example, the Health Insurance Portability and Accountability Act of 1996 (HIPAA) does not

create a privilege for patient medical information, nor completely bar the disclosure of this

information.  *See Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 925-26 (7th Cir.

2004)   HIPAA provides that protected patient medical information can be disclosed in judicial or

administrative proceedings upon entry of a protective order approved by the court.  *See* 45 C.F.R.

§ 164.512(e)(1).

> Under HIPAA, disclosure is permitted, inter alia, pursuant to a court order,
> subpoena, or discovery request when the healthcare provider "receives satisfactory
> assurance from the party seeking the information that reasonable efforts have been
> made by such party to secure a qualified protective order."  The protective order
> must prohibit "using or disclosing the protected health information for any purpose
> other than the litigation," and "[r]equire [ ] the return to the [physician] or
> destruction of the protected health information . . . at the end of the litigation or
> proceeding."

*Allen v. Woodford*, 2007 WL 309485, *5 (E.D. Cal. 2007) (citing 45 C.F.R. § 164.512(e)(1)(v)),

*reconsideration denied*, 2007 WL 841696 (E.D. Cal. Mar. 20, 2007). Similarly, federal statutes and regulations governing the food stamp program do not create a statutory privilege protecting food stamp records from disclosure. *In re Grand Jury Subpoena Duces Tecum*, 2001 WL 896479, * 3 (W.D. Va. 2001).

In a letter dated August 2, 2006, Ms. Pierce indicated that she had already marked as "confidential" some documents obtained from Denver Human Services and noted her client's willingness to designate all documents obtained by subpoena as "confidential" under the terms of the parties' Protective Order (doc. # 55). On September 6, 2006, defense counsel reiterated her intention to mark as "confidential" all documents received in response to the challenged subpoena *duces tecum* "and send copies to all of the parties designated as such." *See* Exhibits B and C attached to Defendants' Response to Plaintiffs' Motion for Sanctions. *See also Lumbermens Mutual Casualty v. United States*, 70 Fed. Cl. 94, 99-100 (Fed. Cl. 2006) (denied plaintiff's request for monetary sanctions in the wake of the government's violation of Rule 45(b)(1); required government to provide plaintiffs with copies of all documents obtained through third-party subpoenas). The Protective Order approved by this court on March 15, 2006, defines "confidential information" to include "the personnel, medical, mental health records or other confidential records of the decedent, Frank Lobato." The Protective Order also explicitly states that all confidential information "shall only be used for the purpose of this litigation and not for any business or other purposes whatsoever," and further provides that confidential information shall not be disclosed, directly or indirectly "to anyone except for purposes of this case" and shall not be divulged "either verbally or in writing, to any other person, entity or government agency unless authorized . . . by court order."

Given the parties' Protective Order, I find HIPAA does not mandate or warrant the non-monetary sanctions requested in Plaintiffs' motion. *Cf. Allen v. Woodford*, 2007 WL 309485 at *4 (holding that a protective order previously entered by the court constituted a "qualified protective order" for purposes of 45 C.F.R. § 164.512(e)(1)(v)). *Compare United States v. Bek*, 493 F.3d 790, 802 (7th Cir. 2007) (holding that the requirements of 45 C.F.R. § 164.512(e)(1)(ii), (iv) and (v) were satisfied where the trial court entered an appropriate order following the seizure of the subject records), *cert. denied*, 2007 WL 2904533 (2007). However, as an additional safeguard, I will exercise my continuing jurisdiction over the parties' Protective Order and direct that all protected medical or health records, including all copies, obtained through third-party subpoenas be returned to the appropriate covered entity at the conclusion of this litigation. *See* 45 C.F.R. § 164.512(e)(1)(v)(B). *See also Shell v. J.J.B. Hilliard*, 2007 WL 509263, *6 (E.D. Tenn. 2007) (declined to impose sanctions for Rule 45(b)(1) violation; noted that plaintiff had not suffered any prejudice and that plaintiff could seek to have third-party documents placed under the protective order previously entered by the court).[1] While the court does not believe that the City Defendants' violation of Rule 45(b)(1) warrants discovery sanctions in this case, Plaintiffs remain free to file a legally and factually supported motion *in limine* challenging the admissibility of the subject records at trial. *Cf. Welch v. Centex Home Equity Co., LLC*, 2004 WL 2331921, *2 (D. Kan. 2004).

---

[1]As an additional sanction for the City Defendants' violation of Rule 45(b)(1), Plaintiffs requested an order striking Defendants' expert, James P. Kelly, for his allegedly improper use of those same records. City Defendants insist that Dr. Kelly did not review or consider any of the records obtained through the challenged subpoenas. That factual representation has not been refuted. In light of the court's findings in this Order, Plaintiffs' request to strike Dr. Kelly as an expert is denied.

B.    Evidence Testing

Plaintiffs challenge certain laboratory testing conducted on evidence obtained at the scene of the Lobato shooting.  The undisputed record shows that on August 5, 2005, approximately 13 months after Frank Lobato was killed, counsel for the City Defendants suggested that the Denver Police Department's Crime Laboratory conduct forensic testing on a syringe and spoon recovered from Mr. Lobato's bedroom.  These tests were requested approximately one month after Plaintiffs filed their original Complaint in state court, and four days after the action was removed to the United States District Court.  It is further undisputed that these tests were conducted without giving advance notice to Plaintiffs.  Although their motion cites no supporting legal authority, Plaintiffs argue that sanctions are required because they were denied the opportunity to have their own experts observe or verify the accuracy of the *ex parte* tests.

Defendants state that the disputed tests were performed by forensic scientists within the Crime Laboratory.

> The crime lab conducted non-destructive testing on the syringe by swabbing it to determine if DNA evidence and/or a controlled substance was present, and conducted non-destructive testing on a small portion of the burned substance found on the spoon to determine if there were any controlled substances present. Plaintiffs' counsel and his experts were allowed to view all items of physical evidence being stored in the Evidence Section [of] the Police Department, including the syringe and spoon, on May 25, 2006.

*See* Defendants' Response to Plaintiffs' Motion for Sanctions, at 15-16.  Defendants indicate that this testing did not detect controlled substances on either the syringe or spoon.

My own research has disclosed no legal precedent directly on point.  Certainly, litigants should not be permitted to conduct "trial by ambush."

When an expert employed by a party or his attorney conducts an examination

10

reasonably foreseeably destructive without notice to opposing counsel and such examination results in either negligent or intentional destruction of evidence, thereby rendering it impossible for an opposing party to obtain a fair trial, it appears that the Court would be not only empowered, but required to take appropriate action, either to dismiss the suit altogether or to ameliorate the ill-gotten advantage.

*Barker v. Bledsoe*, 85 F.R.D. 545, 547-48 (W.D. Okl. 1979).  However, the testing at issue in this case was not destructive, nor were Plaintiffs precluded from conducting their own independent testing.[2]  In the absence of any legal authority to support their position, the court will decline to impose sanctions based upon the City Defendants' non-destructive testing of physical evidence.

C.   Failure to Produce the LaCabe Memoranda

Plaintiffs contend that sanctions should be imposed against the City Defendants based upon their failure to disclose and produce the following memoranda:

(1)   memorandum from Alvin LaCabe to Chief Whitman, dated March 25, 2005 (bates nos. 2173-2178);
(2)   memorandum from Alvin LaCabe to Chief Whitman dated March 29, 2005 (bates nos. 2179-2180); and
(3)   memorandum from Alvin LaCabe to Chief Whitman dated March 29, 2005 (bates nos. 2181-2182).

Plaintiffs contend that the City Defendants relied upon the information contained in these memoranda in their Memorandum Brief in Support of Motion for Summary Judgment (doc. # 126), at page 22, paragraph 93.[3]  Plaintiffs argue that they have been deprived of an opportunity

_____

[2]Courts have issued orders permitting a party to conduct non-destructive testing with reasonable advance notice.  *See, e.g., In re Orthopedic Bone Screw Products Liability Litigation*, 1996 WL 900353, *2 (E.D. Pa. 1996) (requiring the party undertaking non-destructive testing to "take all measures appropriate to preserve the physical condition of the devices and the chain of custody," and permitting representatives of the parties and counsel observe all testing).  A comparable order had not been issued by this court at the time of the challenged testing.

[3]Paragraph 93 states, in its entirety:

to depose LaCabe or Whitman concerning these documents and were unable to "fully respond to Defendants' Motion for Summary Judgment" as a result of Defendants' failure to produce these memoranda.

Counsel for the City Defendants took the position that the LaCabe memoranda were encompassed by the deliberative process privilege[4] in a letter to Plaintiffs' counsel on April 25, 2006.  Thereafter, counsel exchanged correspondence on June 9 and 13, 2006, that signaled an impasse on the question of the applicability of the claimed privilege.  Plaintiffs addressed the

---

93.     After closely reviewing the investigation file, the Manager of Safety, Alvin J. LaCabe, Jr., determined that certain matters needed further investigation and he remanded the matter to Chief Whitman on March 25, 2005. [Exh. A-48].  One document that Manager LaCabe realized had not been part of the initial investigation file, but should have been, was the transcript of the I-calls that took place between some of the officers and supervisors during their response to the call.  This transcript was retrieved and the officers were questioned about its contents. [Exh. A-46, p. 239, l. 2 - p. 240, 1. 3.]  Neither Officer Shiller nor Sgt. Addison recalled discussing Mr. Lobato's possible location in the upstairs bedroom during one of their I-call communications. [Exh. A-21, p. 95, l. 12 - p. 96, l. 16, Exhb. A-8, p. 300, ll. 18-21, p. 335, l. 20 - p. 336, l. 13, p. 347, l. 21 - p.348, l. 17.]

None of the exhibits listed in Paragraph 93 include the LaCabe memoranda at issue.  Exhibit A-48, referenced in Paragraph 93, is a written directive from Mr. LaCabe, dated March 25, 2005, remanding the Order of Discipline issued to Officer Ford back to the Chief of Police for further investigation "in accordance with [Mr. LaCabe's] directives to be separately issued and to thereafter reinitiate the disciplinary process."

[4]The deliberative process privilege protects a government agency's predecisional and deliberative "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Dipace v. Goord*, 218 F.R.D. 399, 403 (S.D.N.Y. 2003) (quoting *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  *But see Casad v. United States Department of Health and Human Services*, 301 F.3d 1247, 1252 (10th Cir. 2002) (observing that intra-agency memoranda from "subordinate" to "superior" are more likely to be deliberative in character than documents traveling in the opposite direction) (citing *Schlefer v. United States*, 702 F.2d 233, 238 (D.C. Cir. 1983)).

LaCabe memoranda during a telephone discovery conference with this court on August 30, 2006, indicating that the City Defendants were withholding these documents on the basis of the deliberative process privilege. I said that I was not inclined to resolve an issue of privilege during a telephone conference and might well have to review the documents *in camera*. At the conclusion of the August 30th conference, I told Plaintiffs to file a motion to compel production of these memoranda. Notwithstanding the court's comments, Plaintiffs never formally moved to compel production of the LaCabe memoranda and have yet to actually brief the applicability of the deliberative process privilege to the particular facts of this case.

The pending motion seeks sanctions and "other relief" for alleged improprieties committed by the City Defendants and their counsel. *But see McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (in the usual course, a motion to compel precedes the imposition of sanctions under Fed.R.Civ.P. 37(a) or (b); suggesting, however, that a court may impose sanctions without a formal motion to compel discovery where a party has received adequate notice that certain discovery proceedings are to occur by a specific date). To the extent that "other relief" includes an order directing Defendants "to produce the documents withheld by Defendants, including the various memoranda between LaCabe and Whitman," I find this request is untimely.

An aggrieved party is expected to seek judicial intervention in a timely manner. *Cf. Butler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) (held that a party cannot ignore available discovery remedies and then move to compel on the eve of trial). *See also Ginett v. Federal Express*, 1998 WL 777998, *5 (6th Cir. 1998) (affirming trial court's denial of motion to compel filed some two months after the discovery cut-off, because plaintiff knew of the document at issue

long before the discovery deadline and failed to file a motion at that time); *Continental Industries, Inc. v. Integrated Logistics Solutions, LLC*, 211 F.R.D. 442, 444 (N.D. Okl. 2002) (held that failure to pursue discovery remedies in a timely manner may result in waiver of discovery violations; noted that it was "especially important that a party file its motion [to compel] before the discovery cutoff"); *Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 1999 (E.D. Mich. 2002) (holding that a court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery); *Intercargo Insurance Co. v. Burlington Northern Santa Fe Railroad*, 185 F. Supp.2d 1103, 1107 (C.D. Cal. 2001) (defendants waived their right to compel more adequate expert disclosures by failing to move within a reasonable period of time after service of the expert reports; court denied motion to strike disclosures).

Here, Plaintiffs were on notice, at least as early as April 25, 2006, that Defendants were withholding the LaCabe memoranda on basis of the deliberative process privilege. Plaintiffs' counsel brought this issue to the attention of the court on August 30, 2006, and was told that he should file a motion to compel if he wished to pursue the matter further. Although the August 30 telephone conference occurred 107 days before the December 15, 2006 discovery deadline, Plaintiffs never moved to compel the production of these documents before that deadline passed. Indeed, Plaintiffs filed the instant Motion for Sanctions and Other Relief approximately 18 months after this discovery dispute first surfaced.[5] Based upon that delay, I find that Plaintiffs have

---

[5]Plaintiffs' Motion for Sanctions suggests that Defendants' failure to produce the LaCabe memoranda impaired their ability "to fully respond to Defendants' Motion for Summary Judgment" which was filed on January 16, 2007. If true, Plaintiffs' inexplicably waited five months to file the instant motion, approximately two months after they filed their Response to Motion for Summary Judgment of Defendants City and County of Denver and Chief of Police Gerald R. Whitman. Plaintiffs' failure to seek relief from the court in a timely manner belies that claim of substantial need.

waived their right to compel the production of the LaCabe memoranda.  Accordingly, the court

will not impose any sanctions based upon Defendants' withholding of those documents.

   D. <u>Failure to Produce Other Documents and Information</u>

  Plaintiffs contend that the City Defendants have withheld "documents that have expressed

criticism of the tactics, training, supervision, discipline and use of force used by the Denver Police

Department in the shooting and killing of Frank Lobato," and have failed to produce "a list of

Denver Police Department officers that have lied or departed from the truth."  *See* Plaintiffs'

Motion for Sanctions, at 7.  Plaintiffs contend that the latter information is relevant to their

allegation that the Police Department's failure to discipline officers is proof of a pattern and

practice of deliberate indifference resulting in the deaths of Mr. Lobato and others.

  These particular allegations are set forth in paragraphs 23 and 24 of Plaintiffs' Motion for

Sanctions.  Unlike other factual allegations presented in the instant motion, Plaintiffs offer no

exhibits or particularized facts in support of these contentions.  For example, if Plaintiffs'

challenge is directed to the sufficiency of Defendants' discovery responses, Local Rule 37.1

would require that Plaintiffs set forth verbatim the interrogatory, request for production and

response to which the challenge is directed.  *See* D.C.COLO.LCivR 37.1.  That information is not

presented in Plaintiffs' motion.  Given the legal standards that the court must apply in imposing

sanctions, I would expect Plaintiffs' counsel to provide any and all relevant information at his

disposal.  The absence of such information is equally significant.  *Cf. Mora v. Bockelmann*, 2007

WL 603410, *2 (N.D.N.Y. 2007) (holding that the party seeking imposition of sanctions under

Fed.R.Civ.P. 37(b)(2) bears the burden of proof); *Gates Rubber Co. v. Bando Chemical*

*Industries, Ltd.*, 167 F.R.D. 90, 109 (D. Colo. 1996) (concluding that dispositive sanctions should

be imposed only where the moving party persuades the court to do so by clear and convincing evidence; lesser sanctions may be imposed where the moving party persuades the judge by a preponderance of the evidence).  I find that Plaintiffs have not sustained their burden of persuasion on this particular challenge and, for that reason, decline to impose sanctions.

For the foregoing reasons, the court will deny Plaintiffs' Motion for Sanctions (doc. # 221).

II.     *Plaintiffs' Motions to Strike and Seal*

On June 19, 2007 at 11:41 p.m., Plaintiffs filed a Motion to Seal[6] (doc. # 222), presumably in anticipation of filing their Motion to Disqualify Karla Pierce as Counsel for the City and County of Denver (doc. # 223) (hereinafter "Motion to Disqualify").  Plaintiffs' counsel filed the latter motion at 0:04 a.m. on June 20, 2007.  Under the District Court's electronic case filing procedures, counsel should have electronically submitted the Motion to Disqualify as a "sealed document event."  That procedure would have precluded public access until the companion Motion to Seal was decided.  Unfortunately, Plaintiffs' counsel selected the wrong filing event and submitted his Motion to Disqualify as a "Motion to Seal Document Plaintiffs' Motion to Disqualify."  Counsel's inadvertent mistake meant that the public had electronic access to the Motion to Disqualify and its attachments immediately upon filing.[7]  On June 20, 2007, Judge Babcock referred Plaintiffs' Motion to Seal to this court for decision.

---

[6]Pursuant to D.C.COLO.LCivR 7.2D, a public notice of this filing would have been posted in the clerk's office and on the court web site, allowing at least three days for any person or entity to file objections to Plaintiffs' Motion to Seal.

[7]As the District Court electronic case filing procedures warn, "[a]ny document submitted under a different event will not be sealed from public view."

On June 21, 2007, the Clerk's staff apparently realized that Plaintiffs' Motion to Disqualify was in the public domain, notwithstanding their Motion to Seal.  As an interim measure, Judge Babcock directed the Clerk's staff to seal the Motion to Disqualify pending a decision on the Motion to Seal.  This action did not purport to withdraw or supersede the June 20, 2007 order of reference.  More importantly, Judge Babcock's action on June 21, 2007 could not have been construed as granting the Motion to Seal filed on June 19, 2007.  *See* D.C.COLO.LCivR 7.2E ("no order to seal . . . will be entered before the date set forth in the public notice for filing objections, except in emergency circumstances shown or referred to in the motion").

Defendant City and County of Denver filed, without sealing, its Response to Plaintiffs' Motion to Disqualify Karla Pierce as Counsel for the City and County of Denver and attachments on July 13, 2007.[8]  On July 16, 2007, Plaintiffs filed their Motion to Strike and Seal City's Response to Plaintiffs' Motion to Disqualify Karla Pierce (doc. # 234).  This motion argued that

---

[8]The court notes that on July 5, 2007, the City and County of Denver requested an extension of time with which to respond to Plaintiffs' Motion to Disqualify, explaining, in part, that

> Because Plaintiffs' Motion to Disqualify was filed under seal, the Defendants were unable to access that motion through the Court's electronic filing system and had to await service of that motion through other means.  The City Defendants first received a copy of that motion by mail on June 21, 2007.

*See* City Defendants' Motion for Extension of Time (doc. # 230), at ¶ 4.  Under the Local Rules, the City should have filed an objection or otherwise responded to Plaintiffs' Motion to Seal no later than July 9, 2007.  However, even if unopposed, Plaintiffs' Motion to Seal could not be granted absent a showing of compelling reasons.  *Cf. Pediamed Pharmaceuticals, Inc. v. Breckenridge Pharmaceutical, Inc.*, 419 F. Supp.2d 715, 731-32 (D. Md. 2006) (declining to seal court filings, even though motions to seal were unopposed, given the parties' failure to make the specific factual representations required by local rule).

the City and County of Denver had purposely filed its Response and attachments without sealing in order to "disparage, defame and damage the reputation of counsel for Plaintiffs" and with the intent "to spread upon the record libelous material so that it would be made available to the public." *See* Plaintiffs' Motion to Strike and Seal, at 2.  Under the Local Rules for the District of Colorado, Defendant City and County of Denver's response to this motion was due on or before August 6, 2007.  *See* D.C.COLO.LCivR. 7.1C.

During a hearing on July 26, 2007 to consider other unrelated motions, Plaintiffs' counsel voiced his strenuous objection to the City's failure to seal its Response to Plaintiffs' Motion to Disqualify.  After a brief discussion, it became apparent to this court that further briefing on the issue of sealing would be necessary.  Plaintiffs' Motion to Seal provided little, if any, legal analysis to support their position.  Defendant City and County of Denver had not yet filed any brief directly addressing the issue of sealing.  In an effort to maintain the status quo while appropriate briefs were prepared, I granted Plaintiffs' Motion to Seal on an interim basis and directed the parties to file briefs on or before July 19, 2007.  Once again, Defendant City and County of Denver filed its brief without sealing.  That action precipitated the filing of Plaintiffs' Motion to Seal (doc. # 245) and Plaintiffs' Motion to Strike Defendant City and County of Denver's Motion to Strike and Seal City's Response to Plaintiffs' Motion to Disqualify (doc. # 246).  To decide these three motions, the court must necessarily consider the merits of Plaintiffs' original Motion to Seal (doc. # 222).

As a preliminary matter, I note the original Motion to Seal did not comply with D.C.COLO.LCivR 7.1A, which provides that

the court will not consider any motion, other than a motion under Fed.R.Civ.P. 12

18

or 56, unless counsel for the moving party . . . , before filing the motion, has conferred or made reasonable, good-faith efforts to confer with opposing counsel . . . to resolve the disputed matter.  The moving party shall state in the motion, or in a certificate attached to the motion, the specific efforts to comply with this rule.[9]

The "meet and confer" obligation incorporated in Local Rule 7.1A seeks to substantially narrow, if not eliminate, disagreements between the parties and thereby reduce the need for judicial intervention.  This salutary goal is no less applicable in the context of a motion to seal, since the process of meeting and conferring may identify less restrictive protections that will suffice.  Plaintiffs' Motion to Seal does not include a certificate of compliance or describe any efforts to comply with Local Rule 7.1A, and could be denied on that basis alone.  I will, however, address the merits of Plaintiffs' Motion to Seal.

Assuming compliance with Local Rule 7.1A, the court may seal all or a portion of papers or documents filed in a case only "[u]pon motion and a showing of compelling reasons."  *See* D.C.COLO.LCivR 7.2A.  *See also Faulman v. Security Mutual Financial Life Insurance Co.*, 2006 WL 1541059 (D.N.J. 2006) (holding that the party bringing a motion to seal has the burden of showing that the interest in secrecy outweighs the presumption of public access).  Plaintiffs' motion suggested that sealing was required because the Motion to Disqualify "contains references to material concerning confidential material that involves ancillary matters that should not be subject to public inspection," and "the subject of this motion is not to be made public as provided for C.R.C.P. Rule 251.31(b)."  *See* Motion to Seal (doc. # 222), at ¶¶ 2 and 3.

Under Colorado's attorney discipline system, the Office of Attorney Regulation Counsel (OARC) is charged with receiving, investigating and prosecuting, where appropriate, disciplinary

---

[9] Plaintiffs' Motion to Seal (doc. # 245) also does not comply with D.C.COLO.LCivR 7.1A and is hereby denied on that basis.

complaints against Colorado lawyers.  *See* Colo.R.Civ.P. 251.3(c)(4).  Proceedings under the

Rules Governing Discipline and Disciplinary Proceedings are initiated by a request for

investigation which may be made by "any person."  *See* Colo.R.Civ.P. 251.9(a)(1).  At the

conclusion of an investigation, the Attorney Regulation Committee may direct the Regulation

Counsel to, *inter alia*, conduct further investigation, dismiss the allegations, or prepare and file a

formal complaint with the Presiding Disciplinary Judge.  *See* Colo.R.Civ.P. 251.12 and 251.14.

Colorado's Rules Governing Discipline and Disciplinary Proceedings specifically address

the issue of confidentiality.  Prior to the filing of a formal complaint with the Presiding

Disciplinary Judge, the Rules impose confidentiality obligations on the OARC and the other

components of the disciplinary system.  *See* Colo.R.Civ.P. 251.31(a) and (b).  *See also* Alec

Rothrock, *Attorney Discipline and Disability Process and Procedure*, 36 FEB Colo. Law. 23, 25

(2007).  Rule 251.31 specifically states, however,

> Unless otherwise ordered by the Supreme Court or the Presiding Disciplinary
> Judge, nothing in these rules shall prohibit the complaining witness, the attorney,
> or any other witness from disclosing the existence of proceedings under these rules
> or from disclosing any documents or correspondence served on or provided to
> those persons.[10]

Plaintiffs' reliance on Rule 251.31(b) as support for their original Motion to Seal is

misplaced.  The Colorado Supreme Court addressed the Rules governing the investigative phase

of the attorney regulation system in *In re Requests for Investigation of Attorney E*, 78 P.3d 300

(Colo. 2003).  In discussing the discovery powers and obligations of the Attorney Regulation

---

[10]As of July 19, 2007, Mr. Padilla had expressed an intention to file with the Presiding
Disciplinary Judge and/or the Colorado Supreme Court a motion for protection.  *See* Plaintiffs'
Brief in Support of Plaintiffs' Motion to Strike and Seal (doc. # 238), at ¶ 19.  To date, Mr.
Padilla has not provided this court with a copy of such a motion or any resulting protective order
that may have been issued.

Counsel, the Colorado Supreme Court noted

> The second paragraph of Rule 251(31(a) explicitly allows the attorney under investigation, the complaining witness and any other witness to the investigative proceedings to disclose the existence of disciplinary proceedings or to disclose any documents or correspondence served on or provided to these persons.  Thus the disciplinary rules explicitly allow the participants in the investigation – the accused attorney, the complaining witness, and any other witness – to disclose the existence of the investigative proceedings and documents before [the Attorney Regulation Counsel] files a formal, public complaint against the accused attorney.

*Id.* at 306 (internal citations omitted).  "The ability of the accused attorneys and witnesses to the investigative proceedings to disclose information if they choose reflects" the goal of increased public visibility that was one of the major goals of the 1999 amendments to the Disciplinary Rules. *Id.* at 307.[11]

After further consideration, this court finds no compelling reason to grant the Motion to Seal.  Accordingly, I hereby lift my interim order of July 16, 2007 and deny Plaintiffs' Motion to Seal (doc. # 222).  The Clerk's office is directed to unseal Plaintiffs' Motion to Disqualify (doc. # 223), subject to the conditions set forth in the concluding paragraphs of this Order.  I can certainly appreciate Mr. Padilla's desire to protect and vindicate his public reputation.  However, those interests alone will not support a motion to seal.  *See Brown & Williamson Tobacco Corp.*, 710 F.2d 1165, 1179 (6th Cir. 1983) ("simply showing that the information would be harmful to the [defendant's] reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records"); *Wedgewood Ltd. Partnership I v. Township of Liberty*, 2007 WL 1796089, *3 (S.D. Ohio 2007) (holding that "a party's interest 'in avoiding adverse publicity' will rarely outweigh the public's interest in disclosure, particularly

---

[11]The cases cited by Plaintiffs in support of their request to seal all pre-date the 1999 amendments to the Rules Governing Discipline and Disciplinary Proceedings.

where, as here, the subject of the litigation is of great public concern"); *Daines v. Harrison*, 838 F. Supp. 1406, 1408 (D. Colo. 1993) (holding that a party's desire to avoid embarrassment or reputational harm "certainly is not a compelling reason to grant a confidentiality order").  In light of my ruling denying Plaintiffs' Motion to Seal (doc. # 222), I find no compelling reason to grant Plaintiffs' Motion to Strike and Seal Defendants' Response to Plaintiffs' Motion to Disqualify (doc. # 234).  That motion is hereby denied.

On August 7, 2007, Plaintiffs filed a Motion to Strike Defendant City and County of Denver's Response to Plaintiffs' Motion to Strike and Seal City's Response to Plaintiffs' Motion to Disqualify (doc. # 246).  Plaintiffs argue that having filed an Opposition to Sealing of Plaintiffs' Motion to Disqualify (doc. # 237) on July 19, 2007, the City and County of Denver was barred from filing a separate Response to Plaintiffs' Motion to Strike and Seal City's Response to Motion to Disqualify (doc. # 243) on August 6, 2007.  Plaintiffs suggest that Defendants' Response to Plaintiffs' Motion to Strike and Seal City's Response to Motion to Disqualify violated "the rules of procedure and orders of the Court."  I disagree.  However, even if Plaintiffs are correct, I find no compelling reason to strike Defendants' Response to Plaintiffs' Motion to Strike and Seal City's Response to Motion to Disqualify, particularly given the court's finding that Plaintiffs failed to establish compelling reasons for their original Motion to Seal.  The court would reach the same result on the issue of sealing regardless of the arguments raised in Defendants' Response to Plaintiffs' Motion to Strike and Seal City's Response to Motion to Disqualify.  Accordingly, Plaintiffs' Motion to Strike and Seal (doc. # 246) is denied.

III.    *Plaintiffs' Motion to Disqualify*

Plaintiffs have separately moved to disqualify counsel for the City Defendants, arguing

that Ms. Pierce improperly initiated an investigation of Plaintiffs' counsel by the Attorney

Regulation Counsel for the State of Colorado based upon Mr. Padilla's contacts with officials of

the City and County of Denver.[12]   Plaintiffs contend that Ms. Pierce took these actions to gain an

advantage in violation of Rule 4.5(a) of the Colorado Rules of Professional Conduct.

Some relevant facts are not in dispute.  It appears that Mr. Padilla spoke to Denver City

Councilman Rick Garcia while attending as an honoree a banquet organized by the Colorado

Hispanic Bar Association on January 20, 2007.  After learning of this conversation from

Councilman Garcia,  Ms. Pierce sent a letter to Mr. Padilla on February 9, 2007, in which she

referenced Rule 4.2 of the Colorado Rules of Professional Conduct and enclosed a copy of Ethics

Opinion 93, *Ex Parte Communications with Government Officials,* a Formal Opinion written by

the Ethics Committee of the Colorado Bar Association.  In her letter, Ms. Pierce wrote:

> I cannot fathom how you could have possibly though it was permissible for you to
> communicate directly with Councilman Garcia about settlement in this case.  Your
> communication with him is no less ethical than if I called one of the Lobato
> children directly and told them that you were being obstinate in settlement
> negotiations and not looking after their best interests.

Ms. Pierce closed by stating that she would not "tolerate" Mr. Padilla's *ex parte* communications

with her clients.  It is also undisputed that on March 29, 2007, Mr. Padilla spoke by telephone

with Alvin LaCabe, an attorney and the City of Denver's Manager of Safety.  On March 30, 2007,

Ms. Pierce again wrote to Mr. Padilla complaining of his recent *ex parte* communication with Mr.

LaCabe.  Ms. Pierce closed this letter by telling Mr. Padilla that he "may expect that I will be

taking appropriate action in regard to this incident, as well as your prior inappropriate *ex parte*

---

[12]These same allegations were raised in Plaintiffs' Motion for Sanctions and Protective
Order and Other Relief Against Defendants City and County of Denver and Whitman (doc. #
221).

23

contacts with Councilman Rick Garcia."  On April 4, 2007, Ms. Pierce wrote to the Office of the

Attorney Regulation Counsel stating that she wished to file a complaint against Mr. Padilla.

As the court has come to expect, Mr. Padilla and Ms. Pierce disagree as to the

circumstances surrounding these conversations and the specific statements made by the

participants.

Mr. Padilla contends that his banquet conversation with Councilman Garcia lasted less

than a minute, and that he merely expressed his belief that taxpayer funds should be directed to

resolving this litigation rather than "defending this indefensible shooting and killing of an innocent

man" and "exacerbating the conflict through litigation."[13]  *See* Reply to Defendant City and

County of Denver's Response to Plaintiffs' Motion to Disqualify, at 2.  Councilman Garcia

represents Mr. Padilla's district and they have known each other for years through their

involvement in Denver politics.  According to Mr. Padilla, "City Councilman Garcia had in fact

called Mr. Padilla to inquire about the status of the Lobato case and to seek his opinion prior to

[Councilman] Garcia's taking a position on the request for a grand jury investigation of Denver

Police Officer Ford in the Lobato killing."  *See* May 14, 2007 Letter from David Lane to Louise

Culberson-Smith, Office of the Attorney Regulation Counsel, attached as Exhibit 2 to Plaintiffs'

Motion to Disqualify.  As for his March 29 conversation with Mr. LaCabe, Plaintiffs' counsel

contends that he called to inquire about the administrative appeal involving James Turney, a

Denver Police officer who had shot and killed a developmentally disabled minor, Paul Childs, on

July 5, 2003, and the status of disciplinary action against Denver Police officer Joseph Bini, who

---

[13]Any settlement between a claimant and the City and County of Denver in excess of $5,000 requires the approval of the Mayor and City Council and passage of an ordinance.

allegedly had filed a false affidavit in a separate incident involving the death of Ismael Mena on

September 23, 1999.  According to Mr. Padilla, Mr. LaCabe stated that the Turney administrative

appeal was pending before the Civil Service Commission.  Mr. Padilla insists that he has known

Mr. LaCabe in a professional capacity for a number of years and that he and Mr. LaCabe did not

discuss the Lobato shooting during their March 29th conversation.  Mr. Padilla also contends that

all the information he sought in the conversation with Mr. LaCabe was publically available.  *Id.* at

3.

Ms. Pierce claims that she received a telephone call from Councilman Garcia on February

8, 2007, relating his conversation with Mr. Padilla.  According Ms. Pierce, Councilman Garcia

recounted how Mr. Padilla had expressed his displeasure "about the City's stance on mediation

and his belief that settlement of his case would be in the best interests of the City."  *See* April 4,

2007 Letter from Karla Pierce to Louise Culberson-Smith, Office of the Attorney Regulation

Counsel, attached as Exhibit 1 to Plaintiffs' Motion to Disqualify.  In a subsequent letter to Ms.

Culberson-Smith on May 29, 2007, Ms. Pierce elaborated on her conversation with Councilman

Garcia.

> When Councilman Garcia contacted me to report his interaction with Mr. Padilla,
> he specifically related Mr. Padilla's expressed concerns that attorneys for the City
> and for the other defendants in the *Lobato* case were being unreasonable both
> about the conditions under which they would agree to private mediation and in
> their stance on settlement to date.  In fact, his call to me had two expressed
> purposes: to report the conversation, which would not have been necessary had it
> not related directly to the case; and to ask me why the parties had not yet been
> successful settling the case or agreeing on terms for mediation, something
> Councilman Garcia would not have been aware of unless Mr. Padilla told him.

*See* May 29, 2007 Letter from Karla Pierce to Louise Culberson-Smith, Office of the Attorney

Regulation Counsel, attached as Exhibit C to Defendants' Response to Plaintiffs' Motion to

Disqualify.

As for Mr. Padilla's conversation with Mr. LaCabe, Ms. Pierce claims she was told by Mr.

LaCabe

> that he cautioned [Mr. Padilla] up front that he could not discuss the *Lobato* case
> with [him] directly.  [Mr. Padilla] agreed, but then proceeded to elicit information
> from Mr. LaCabe about prior police shooting cases, including the *Turney* discipline
> matter and the *Mena* case, specifically inquiring as to the status of the *Turney* case,
> what actions he had taken in regard to that case, and where [Mr. Padilla] could
> obtain documents pertaining to that case.

*See* March 30, 2007 Letter from Karla Pierce to Kenneth Padilla*, attached as Exhibit B to

Defendants' Response to Plaintiffs' Motion to Disqualify.

Mr. Padilla and Ms. Pierce both cite the Colorado Rules of Professional Conduct in

attempting to justify their actions.  Plaintiffs' Motion to Disqualify invokes Rule 4.5(a) of the

Colorado Rules of Professional Conduct, which provides that a lawyer "shall not threaten to

present criminal, administrative or disciplinary charges to obtain an advantage in a civil matter,

nor shall a lawyer present or participate in presenting criminal, administrative or disciplinary

charges solely to obtain an advantage in a civil matter."[14]  The Comment accompanying Rule

4.5(a) points out that

> The rule distinguishes between threats to bring criminal, administrative or
> disciplinary charges and the actual filing or presentation of such charges.  Threats
> to file such charges are prohibited if a purpose is to obtain <u>any</u> advantage in a civil
> matter while the actual presentation of such charges is proscribed by this rule only
> if the <u>sole</u> purpose for presenting the charges is to obtain an advantage in a civil
> matter.

---

[14]Ms. Pierce's letters of February 9 and March 30, 2007 did not violate Rule 4.5, which
permits an attorney to notify another person that "the lawyer reasonably believes that the other's
conduct may violate criminal, administrative or disciplinary rules."  *See* Rule 4.5(b), Colorado
Rules of Professional Conduct.

Mr. Padilla contends that a grievance was filed with the OARC in an effort to chill his efforts to seek redress from government officials who "publicly promised to compensate Plaintiffs for their injuries in the wrongful death of their father," and to stigmatize Mr. Padilla. *See* Plaintiffs' Motion to Disqualify, at 4. Counsel insists that Ms. Pierce's actions have infringed upon his First Amendment rights and the First Amendment rights of his clients.

Based upon the factual record presented in the parties' briefs, I conclude that Plaintiffs have failed to establish a violation of Rule 4.5(a). Plaintiffs suggest that Ms. Pierce filed her grievance in an effort to prevent Mr. Padilla from communicating to responsible City officials his dissatisfaction with the course of settlement discussions and the City's expenditures for outside counsel in this case. At the time Ms. Pierce submitted her grievance against Mr. Padilla, discovery in this case had closed and the City Defendants had filed their motion for summary judgment. The parties had already participated in one court-supervised settlement conference and one session with a private mediator. Subsequent to Ms. Pierce's letter of February 9, 2007, Mr. Padilla sent a letter to the Denver City Attorney on February 13, 2007, in which he referred to "the procedural impediments raised by Defendants' attorneys that have prevented the settlement conference from being finalized." *See* February 13, 2007 Letter from Kenneth Padilla to Lawrence Manzanares, included in Exhibit B attached to Defendants' Response to Plaintiffs' Motion to Disqualify. Councilman Garcia's apparent interest in the status of settlement discussions led to a briefing that Ms. Pierce gave to the Mayor and City Council on February 20, 2007. Given the posture of the litigation in early April 2007, I find no facts that would support a finding that Ms. Pierce's sole motivation was to gain an advantage in this case, either for purposes of trial or settlement.

Ms. Pierce insists that her contacts with the OARC were prompted solely by Mr. Padilla's repeated failure to comply with Rule 4.2 of the Colorado Rules of Professional Conduct, which states that

> in representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Rule 4.2 is designed "to prevent situations in which a represented party may be taken advantage of by adverse counsel; the presence of the party's attorney theoretically neutralizes" any undue influence. *University Patents, Inc. v. Kligman*, 737 F. Supp. 325, 327 (E.D. Pa. 1990). *See also Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y. 1990) (Rule 4.2 prevents counsel from exploiting the disparity in legal skills between an attorney and lay persons or driving a wedge between the opposing attorney and that attorney's client).

In the context of this case, Councilman Garcia and Manager of Safety LaCabe fall within the expansive definition of "party" contemplated by Rule 4.2. *See Chancellor v. Boeing Co.*, 678 F. Supp. 250, 253 (D. Kan. 1988) (holding that for purposes of Rule 4.2, a current employee is a "party" if he or she has managerial responsibilities, his or her acts or omissions in connection with the matter may be imputed to the organization, or if his or her statements may be admissions on the part of the organization). *Cf. Hammond v. City of Junction City, Kansas*, 167 F. Supp.2d 1271, 1284-85 (D. Kan. 2001) (construing the term "managerial responsibility" in the context of Rule 4.2); *Carter-Herman v. City of Philadelphia*, 897 F. Supp. 899, 904 (E.D. Pa. 1995) (holding that for purposes of Rule 4.2, officials in the Philadelphia Police Department down to the level of captains and lieutenants have managerial responsibilities). Yet, Mr. Padilla contends that

28

his *ex parte* contacts with these individuals fall within the Rule 4.2 exception for communications "authorized by law."

Courts have reached decidedly different results in applying Rule 4.2 to governmental entities. *Compare Frey v. Department of Health and Human Services*, 106 F.R.D. 32, 35 (E.D.N.Y. 1985) (precluding *ex parte* contacts with government employees having managerial authority) and *Camden v. State of Maryland*, 910 F. Supp. 1115, 1118 n. 8 (D. Md. 1996) (observing that "Rule 4.2 has been uniformly interpreted to be inapplicable" where a governmental organization is a party). *See also Fairley v. Andrews*, 423 F. Supp.2d 800, 810 (N.D. Ill. 2006) (declined to grant the county defendant's request for a protective order preventing plaintiffs from directly contacting county commissioners; found no violation of Rule 4.2, particularly where county officials voluntarily spoke with plaintiffs' counsel). Another court has suggested that counsel may ethically engage in *ex parte* communications with government employees who have

> "authority to take or recommend action in the matter;" when the sole purpose of the communication is to address a policy issue, including settling the controversy; and when the lawyer for the party gives government counsel reasonable advance notice of the intent to communicate with the official.

*Hammond v. City of Junction City, Kansas*, 2002 WL 169370, *6 (D. Kan. 2002) (citing ABA Committee on Ethics and Professional Responsibility, Formal Op. 97-408 (1997)).

Ultimately, the disposition of Plaintiffs' Motion to Disqualify does not require this court to decide whether Mr. Padilla or Ms. Pierce violated any Rule of Professional Conduct. Rather, the court must determine whether Plaintiffs have presented adequate grounds for Ms. Pierce's

disqualification as counsel for the City Defendants.[15]   Tenth Circuit precedent recognizes that

> Motions to disqualify are governed by two sources of authority.  First, attorneys
> are bound by the local rules of the court in which they appear. . . . Second, because
> motions to disqualify counsel in federal proceedings are substantive motions
> affecting the rights of the parties, they are decided by applying standards
> developed under federal law.

*Cole v. Ruidoso Municipal Schools*, 43 F.3d 1373, 1383 (10th Cir. 1994).  By Local Rule, the

District of Colorado has adopted most of the Rules of Professional Conduct established by the

Colorado Supreme Court.  *See* D.C.COLO.LCivR 83.4.  However, "a violation of a disciplinary

rule does not automatically result in disqualification."  *Carbajal v. American Family Life*

*Insurance Co.*, 2006 WL 2988955 (D. Colo. 2006).  *But see Weeks v. Independent School*

*District No. 1-89*, 230 F.3d 1201, 1211 (10th Cir. 2000) (noting that disqualification may be

ordered as a remedy for a violation of Rule 4.2).

Disqualification is not appropriate "unless the claimed misconduct in some way 'taints' the

trial or the legal system."  *Federal Deposit Insurance Corp. v. Isham*, 782 F. Supp. 524, 528 (D.

Colo. 1992) (Babcock, J.).  "Where a threat of tainting the trial does not exist, . . . the litigation

should proceed, [and] the remedy for unethical conduct [should be found] in the disciplinary

machinery of the state and federal bar."  *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1476 (D.

Utah 1994) (suggesting that a motion to disqualify must be decided based upon the specific facts

of each case).  The party moving to disqualify opposing counsel bears the burden of persuasion.

*English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F. Supp. 1498, 1506 (D. Colo. 1993).

---

[15]Motions to disqualify counsel are non-dispositive for purposes of 28 U.S.C. § 636(b).
*See Hutchinson v. Pfeil*, 105 F.3d 562, 565 (10th Cir. 1997) (holding that a magistrate judge has
authority under 28 U.S.C. § 636(b)(1) to rule on a motion to disqualify counsel for alleged
violations of rules of professional conduct).

Here, I do not find that Plaintiffs have sustained their burden with the instant Motion to Disqualify.  The court is not convinced that Plaintiffs have established a violation of Rule 4.5.  More importantly, the court does not find that Ms. Pierce's conduct threatens to taint a trial on the merits in this case.

While I do not find that Ms. Pierce or Mr. Padilla's conduct has tainted any impending trial, their ill-advised wrangling has served no useful purpose and only slowed the progress of this case.  The circumstances underlying the instant motion illustrate the point.  If Ms. Pierce truly believed that Mr. Padilla had initiated *ex parte* communications with City officials in violation of Rule 4.2, she could have sought a protective order from this court prohibiting further improper contacts.  *See* Fed.R.Civ.P. 26(c) (permitting the court to enter any order which justice requires to protect a party or person from annoyance, embarrassment or oppression).  *See also MacArthur v. San Juan County*, 2002 WL 1806855, *3 (D. Utah 2001) (entering a protective order precluding counsel from contacting a county commissioner on an *ex parte* basis regarding anything other than policy matters); *Hurley v. Modern Continental Construction Co., Inc.*, 1999 WL 95723, *2 (D. Mass. 1999) (granting defendants' Emergency Motion to Prohibit Ongoing Litigation Practice Abuses and barring plaintiffs' counsel from any further contact with defendant's current employees without the consent of defense counsel or leave of court); *McCallum v. CSX Transportation, Inc.*, 149 F.R.D. 104, 113 (M.D.N.C. 1993) (while declining to impose sanctions for violations of Rule 4.2, the court entered an order prohibiting any further *ex parte* communications without permission from the court).

Mr. Padilla also could have saved time and expense by bringing this dispute to the court's attention at an earlier point in the chain of events.  Counsel clearly have a difference of opinion as

31

to the applicability or scope of Rule 4.2 with respect to governmental entities and employees.  By February 9, 2007, Plaintiffs' counsel was on notice that Ms. Pierce had adopted a restrictive view of that Rule and objected to any further *ex parte* communications with City officials.  Rather than exacerbating the situation, Mr. Padilla could have moved for leave of court to conduct *ex parte* interviews.  *Cf. Belote v. Maritrans Operating Partners, L.P.*, 1998 WL 136523, * 7 (E..D. Pa. 1998) (given questions concerning the propriety of *ex parte* interviews, noted that counsel should have notified opposing counsel of his intent to conduct informal interviews of employees or sought leave of court to do so).

> There is a difference between doing something one believes to be proper and later learns is not when a court rules on a previously unsettled point, . . . and doing something the propriety of which one knows is in doubt.  Rather than informing opposing counsel of his intent to talk with [plaintiff's] employees or seeking leave to do so, [defense counsel] imprudently proceeded with the interviews unilaterally without regard for the potential legal and ethical ramifications.

*University Patents, Inc. v. Kligman*, 737 F. Supp. at 329.  *Cf. U.S. ex rel. Lockyer v Hawaii Pacific Health*, 490 F. Supp.2d 1062, 1089 (D. Ha. 2007) (while finding that counsel's communication fell within the Rule 4.2 exception for communications with government officials, suggested that the "better practice" would have been for defense counsel to notify opposing counsel prior to initiating those communications).

Having found no compelling reason to disqualify Ms. Pierce, the court will deny Plaintiffs' request for injunctive relief ordering Ms. Pierce to refrain from filing "false and unjustified complaints" against Mr. Padilla.  This court agrees that "standards for professional conduct meant to be enforced by entities governing the practice of law cannot be enforced effectively by the court during litigation."  *Evans v. Taylorsville City*, 2007 WL 2892629, *2 (D. Utah 2007).  The

court fears, if past experience is any indication, such an order would merely invite the filing of

additional motions to gain some perceived tactical advantage.  I will also deny Plaintiffs' request

for an award of fees and costs.  As noted previously, Mr. Padilla and Ms. Pierce share

responsibility for the unfortunate sequence of events that necessitated this Order.  Under the

circumstances, I see little reason to draw distinctions between their conduct.

Finally, Plaintiffs' Motion to Disqualify includes a request for leave to amend their

Complaint "to include additional civil rights violations that have occurred as a result of the action

of counsel for the City and County of Denver."  The court acknowledges the well-settled rule that

motions to amend should be freely granted when justice requires.  *See, e.g., Bellairs v. Coors*

*Brewing Co.*, 907 F. Supp. 1448, 1459  (D. Colo. 1995).  However, a motion to amend may be

denied because of "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

etc. . . ."  *Foman v. Davis,* 371 U.S. 178, 182 (1962).

Here, Plaintiffs have not provided the court or opposing parties with an advance copy of a

proposed amended complaint.  *Cf. Partlow v. Frank*, 1991 WL 533635  (D. N.H. 199) (unless a

motion for leave to amend is accompanied by the proposed amended complaint, opposing counsel

has no means to determine whether to object and the court cannot properly evaluate the propriety

of the posed amendments); *Bownes v. City of Gary, Indiana*, 112 F.R.D. 424, 425 (N.D. Ind.

1986) ("common sense" dictates that a party seeking leave to amend should accompany his

motion with a copy of the proposed amended complaint); *Williams v. Wilkerson*, 90 F.R.D. 168,

170 (E.D. Va. 1981) (where plaintiff sought leave to amend, a copy of the proposed amended

pleading must be attached to the motion).  "Without the proposed amendment, it is impossible to

determine whether justice requires that the amendment be granted." *Clonlara, Inc. v. Runkel*, 722 F. Supp. 1442, 1449 (E.D. Mich. 1989).

## CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

1.      The court's Order of July 16, 2007 granting Plaintiffs' Motion to Seal (doc. # 222) on an interim basis is hereby VACATED and Plaintiffs' Motion to Seal is DENIED.  The Clerk's office is directed to unseal Plaintiffs' Motion to Disqualify (doc. # 223).

2.      Plaintiffs' Motion for Sanctions and Protective Order and Other Relief Against Defendants City and County of Denver and Whitman and their Counsel for Numerous Improprieties (doc. # 221) is DENIED.

3.      Plaintiffs' Motion to Disqualify Karla Pierce as Counsel for the City and County of Denver, for Sanctions, Protective Order and to Allow Plaintiffs to Amend Their Complaint to Include Additional Civil Rights Violations that have Occurred as a Result of the Actions of Counsel for the City and County of Denver (doc. # 223) is DENIED.

4.      Plaintiffs' Motion to Strike and Seal City's Response to Plaintiffs' Motion to Disqualify Karla Pierce as Counsel for the City and County of Denver, for Sanctions, Protective Order and to Allow Plaintiffs to Amend Their Complaint to Include Additional Civil Rights Violations that have Occurred as a Result of the Actions of Counsel for the City and County of Denver (doc. # 234) is DENIED.

5.      Plaintiffs' Motion to Seal (doc. # 245) is DENIED.

6.      Plaintiffs' Motion to Strike Defendant City and County of Denver's Response to Plaintiffs' Motion to Strike and Seal City's Response to Plaintiffs' Motion to Disqualify Karla

Pierce as Counsel for the City and County of Denver, for Sanctions, Protective Order and to

Allow Plaintiffs to Amend Their Complaint to Include Additional Civil Rights Violations that have

Occurred as a Result of the Actions of Counsel for the City and County of Denver (doc. # 246) is

DENIED.

The Clerk's office is specifically directed to stay implementation of this Order for a period

of ten days to allow for the filing of objections pursuant to Fed.R.Civ.P. 72.


DATED at Denver, Colorado this 9th day of November, 2007.

BY THE COURT:


___s/Craig B. Shaffer_____
United States Magistrate Judge